## HANNAH S. HART et al.

*v.*

## EDGAR V. KENNEDY.

1. The appointment of an umpire or third arbitrator, by chance, is bad.

2. But where two arbitrators, having power to appoint the third, are of opinion that the two persons respectively proposed by them are equally fit, and they then select, by lot, one of the two, for the third, the appointment is good.

3. There can be no judgment without knowledge.

4. Consent given in ignorance of any material fact is without effect.

5. Arbitrations are to be conducted, in the absence of an express agreement to the contrary, upon the ordinary principles upon which other judicial inquiries are conducted. The parties have a right to be heard by proof and argument.

6. A refusal by arbitrators to hear pertinent and material evidence is such gross misbehavior as renders their award invalid.

7. Nothing short of plain and clear words will be held to be sufficient to constitute a waiver of the right of a party to be heard by his proofs.

8. Where it does not appear that a party claiming an estoppel has lost or will lose something of value, in consequence of the act or omission of his adversary which he makes the basis of his claim, his claim must be adjudged groundless.

On motion to strike out.

*Mr. Charles M. Woodruff* and *Mr. Flavel McGee*, for the motion.

*Mr. Charles J. Roe* and *Mr. Lewis Van Blarcom*, contra.

VAN FLEET, V. C.

The object of the suit in this case is to compel the defendant to perform an award, requiring him to lower a dam which he has erected across the Pequest creek, in the county of Sussex. Besides answering, the defendant has filed a cross-bill, asking that the award may be set aside. The complainants now move, on notice under paragraph 224 of the rules, to strike out all the material parts of both the answer and cross-bill, on the ground, that if everything alleged in them is admitted to be true, still a decree must go in favor of the complainants, the contention being, that the facts set forth in the defendant's pleadings constitute neither a defence to the complainants' action, nor a sufficient foundation for the affirmative relief which he asks. The defendant seeks to impeach the award, *first*, because one of the arbitrators, who made it, was selected by chance; *second*, because a majority of the arbitrators were guilty of gross misbehavior; and, *third*, because two of the arbitrators were incompetent and partial.

To render it easy to understand the questions raised by the motion, it is necessary that a statement should be made showing what preceded the making of the award which is the subject of the present controversy. The complainants had brought two actions against the defendant—one at law to recover damages for the injury their lands had sustained by backwater, and the other in equity to compel the defendant to lower his dam. The defendant denied the complainants' right to maintain either

Hart v. Kennedy.

action. While these two suits were pending, the parties, in December, 1888, agreed to submit the matters in difference between them to the decision of three competent and impartial civil engineers, who understood the force, pressure and effect of water, one to be selected by the complainants, another by the defendant, and the third by the other two. The three so selected were to survey the ground, take levels and determine, *first*, whether backwater on the lands of the complainants was caused by the dam of the defendant, and whether his dam caused water to overflow and damage the lands of the complainants; and, *second*, if so, how much the dam of the defendant should be reduced to prevent such backwater. Two of the three arbitrators were selected by the parties. The defendant, by his answer and cross-bill, avers that when the two selected by the parties met to select the third, they each named a person, but, as the person named by each was unknown to the other, neither would consent to the appointment of the person named by the other; and that the two thereupon, by mutual consent, proceeded to choose the third by casting lots in this wise: each wrote the name of the person he wanted chosen as the third arbitrator on a slip of paper, the two slips were then put into a hat and one of them drawn out by a third person, and the person whose name was so drawn was then, on the same day, appointed by the two as the third arbitrator, by a writing which both signed. The person thus chosen was the nominee of the arbitrator selected by the complainants. The defendant, by both his pleadings, says that each of the two arbitrators refused to agree to or accept the person named by the other, as the third arbitrator, for the reason that the nominee of the other was unknown to him, and that he had had no opportunity to inquire concerning him, and he did not, therefore, know whether or not he possessed the qualifications required by the arbitration agreement. The award was made by only two of the three arbitrators. The arbitration agreement empowered a majority to make an award. The two who made the award were the arbitrator selected by the complainants and the person who acted as the third arbitrator. The defendant, by both his pleadings, alleges that the two arbitrators, who made the

award, refused to hear any evidence, on his part, pertinent and material to the matters in dispute. He says, that when they first met to enter upon the discharge of their duties, as well as subsequently, he asked permission to lay such evidence before them, but that his request, each time it was made, was refused. He further says, that the evidence he asked permission to lay before them consisted, as he stated to them, of the testimony of witnesses who had been acquainted with his lands and those of the complainants for forty years and upwards, and who knew the lands of both before any dam existed on the lands which he now owns; and which would have shown that the lands of the complainants are not now submerged to any greater extent, nor in any worse condition, than they were before any dam was erected on the lands now owned by him. And which testimony would also have proved that the lands of the complainants, which it is claimed are injured by backwater, have always been, as well now as before the erection of any dam on the lands which he now owns, swampy, low and boggy, holding a large quantity of water, and that the Pequest creek, where it passes through the lands of the complainants, is now, and always has been, a sluggish and crooked stream, obstructed in its course, and that the rise and fall of water on the complainants' lands was not caused by his dam, but by dams further up the stream, which penned back the water and then discharged it, at intervals, in volumes larger than the water-way could carry, thus causing it to flood the complainants' lands.

The foregoing statement exhibits the only really substantial grounds, disclosed by the pleadings, on which the validity of the award can be attacked. The averments of the answer and cross-bill, charging two of the arbitrators with incompetency and partiality, are not sufficient, in my judgment, even assuming them to be true in all their length and breadth, to justify the court either in refusing relief to the complainants, or in giving affirmative relief against them. No fact showing incompetency is alleged. All that the defendant says against the two, whose fitness he impugns, is that he has no knowledge or information respecting their qualifications, and therefore charges that they are

Hart v. Kennedy.

not persons of the character and qualifications required by the arbitration agreement. He makes his ignorance the basis of his accusation. A pleading of this kind requires no criticism. The form in which the charges of partiality are made is also manifestly imperfect as a pleading. Not a single fact showing partiality is alleged as a fact which can be proved. All that the defendant's pleadings say on this point is, that he has been informed and believes that one of the arbitrators, during the progress of the arbitration, said to one person that the defendant's dam must be lowered eighteen inches, and to another, that the third arbitrator was under his influence and would do whatever he wanted him to do. The issue tendered by this form of pleading is, as is apparent, utterly immaterial, but was the form of the pleading changed, so that what is now alleged on information and belief would be directly averred as a fact which could be proved, still the pleading would not, in its changed form, aver any fact which, if proved, would make the award invalid. An expression of opinion by an arbitrator, during the progress of the arbitration, concerning any of the matters in dispute, may show lack of discretion or want of proper appreciation of the proprieties of his position, but such act, standing alone, furnishes no evidence whatever of partiality. And certainly a mere boastful claim of influence, by one person over another, should, under no circumstances, be accepted as proof that the boaster possessed what he claimed. In my opinion, the complainants are entitled to prevail in their motion as to those parts of the answer and cross-bill in which the defendant alleges that two of the arbitrators were incompetent and partial; and also as to those parts of the defendant's pleadings in which he charges two of the arbitrators with misconduct because they refused to make an experiment which he requested them to make.

But as to the other parts of the defendant's pleadings, which the complainants ask to have expunged, there would seem to be no doubt that the defendant has a clear right to have them to stand and to go to hearing on them. This branch of the case presents two questions, the first of which is: Was the third arbitrator selected in such manner as to render an award made by

the majority of the arbitrators, of whom the third was one, valid and effectual against the defendant? The arbitrators were to be gentlemen possessing special scientific qualifications—they were to be civil engineers who understood the force, pressure and effect of water. Two were to be selected by the parties, and the two thus selected were to choose the third. The two, in choosing the third, performed, in the language of Justice Coleridge, a judicial act of the last importance to the parties, in the performance of which the parties had a right to the exercise of their joint judgment up to its entire completion. *Lord* v. *Lord, 5 El. & B. 404, 407.* Knowledge is indispensably necessary to judgment. It was not possible for either of the two to form such a judgment, respecting the fitness of the person proposed for the third, as the parties were entitled to, unless he had either previously personally known the person proposed, or known of him for a sufficient length of time to become acquainted with his professional qualifications or standing. If he did not either know the person proposed, or know of him, he would necessarily be totally unable, in consequence of his ignorance, to form a judgment respecting his qualifications. As to one of the two arbitrators, it stands, for the purposes of the present motion, as an admitted fact, that he consented to the selection of the third, by casting lots, without sufficient knowledge of his professional acquirements or standing to be able to judge whether he would be a fit appointee or not. The answer and cross-bill, it will be remembered, both distinctly aver, that each of the two arbitrators refused to agree to or accept the person proposed by the other, as the third, because the nominee of the other was not only unknown to him, but also because he did not know that such nominee possessed the qualifications required by the arbitration agreement. For present purposes, therefore, it must be taken as an admitted fact, that the third arbitrator was selected without the least exercise of judgment by one of the two, as to the qualifications of the third, and that, as to him, the selection of the third was entirely the result of chance, and not the result of his judgment.

Now, although it is true that the cases, involving the same question which is presented here, have not all been decided

Hart *v.* Kennedy.

:according to precisely the same legal principle, yet I think it may safely be affirmed, that no case can be found which declares that the appointment of an umpire or third arbitrator, made in :the manner in which it is confessed that the third was chosen in ·this case, is valid. The earliest case on this subject, which has ·come under my notice, is *Harris* v. *Mitchell, 2 Vern. 485,* decided :in 1704. The submission here provided that if the two persons selected as arbitrators did not make an award within a certain time, the two were then to choose an umpire whose award should be final. No award was made within the time limited. The two then each named a person for umpire, but failing to agree upon either of the persons named, they agreed to throw cross and pile as to which should have the naming of the umpire or whose man ·should stand. And the umpire was chosen in this way. The ,parties, on the umpire's summons, afterwards attended before him, and he subsequently made his award. On a bill to set the award aside, the master of the rolls held, that an election or ·choice of an umpire is an act that depends on the will and under-.standing, and that as the two arbitrators had followed neither in the selection of the umpire, but had committed his selection to ·chance, the award should be set aside. The next·case, in order ·of time, is *Neale* v. *Ledger, 16 East 51,* decided in 1812. In :this case it was held—Lord Ellenborough pronouncing the judgment of the court—that where two arbitrators toss up to decide which of them shall nominate the third, in exclusion of the other, :and the third is selected in that way, that the appointment is bad. But it was also held, that where each of the two nominate a person for the third, who, in the judgment of the other, is nearly as fit as his own nominee, and the two then select, by lot, one of the two, whom both approve as fit, the appointment is good. Lord Ellenborough concluded his judgment in this case by remarking: " The mode of appointing twelve jurors, out of all those who :are returned as fit to serve, is by lot." In *Wells* v. *Cooke, 2 Barn. & Ald. 218,* the award was set aside because the umpire ·was chosen by drawing lots.

In 1829 the court of king's bench, after an examination of all the prior adjudications, and very careful consideration, said,

speaking by Lord Tenterden : " The parties to the arbitration
expect the concurring judgment of the two in the appointment
of the third; and we think it better not to decide the present
case upon any nice ground of resemblance to or difference from
the other [cases], which might lead to discussion and litigation
in other cases, but to lay it down as a general rule, that the ap-
pointment of the third person must be the act of the will and
judgment of the two—must be matter of. choice and not of
chance, unless the parties consent to or acquiesce in some other
mode." *In, re Cassell, 9 Barn. & C. 624.* The .rule thus laid
down, though a departure from the. principle established by *Neale*
v. *Ledger*, will be found to have been, adhered to, not, however,
without the expression of a doubt, from 1829 to 1867, as an ex-
amination .of the .following cases will show.: *Ford* v. *Jones, 3*
*Barn. & Ad. 248 ; In re Tunno and Bird, 5 Barn. & Ad. 488 ;*
*In re Jamieson and Binns,.4 Ad. & E. 945 ; In re Greenwood*
*and Titterington, 9 Ad. & E. 699 ; Steam Shipping Co.* v. *Cross-*
*key, 8 Com. B. (N. S.) 397.* But in 1867 the court of queen's
bench reaffirmed the principle laid down in *Neale* v. *Ledger.* In
the case then before the court it appeared that the arbitrators, not
being able to agree in the appointment of an umpire, cast lots as
to which of the two persons proposed should be appointed, but.
before they cast lots they each agreed that the person proposed
by the other was a fit and proper person to be umpire and to
discharge the duties which would be thrown upon him. It thus
appeared that the parties had had the benefit of the judgment of
the two as to the fitness of the person selected by them as the
third. Cockburn, C. J., said : " Where there is a concurrent
judgment expressed by the arbitrators that the person eventually
appointed is a fit person, there is no reason why, because they
have determined by lot between A and B, each equally fit, the
award should be set aside." *In re Hopper, L. R. (2 Q. B.) 367,.*
*375.* · This is the principle now in force in England. Its wis-
dom and justice are obvious. It secures to the parties the full
benefit of the concurrent judgment of the two persons to whom
they have committed the selection of the third, as to his fitness,
and at the same time prevents the defeated party from defeating

the object of the arbitration and overthrowing the award on a ground which does not touch the merits of the controversy, but is purely technical in its character.

But it is insisted that the court should presume, in the absence of all knowledge of what the truth is, that the defendant consented that the third arbitrator should be selected by chance. Should such a presumption be made, the action of the court would, in my opinion, be much less excusable and much more indefensible than that of the two arbitrators. There can be no consent without knowledge. Consent given in ignorance of any material fact is no consent. *In re Jamieson and Binns,* *4 Ad. & E. 945; In re Greenwood and Titterington, 9 Ad. & E. 699.* In the case last cited, Lord Denman said: "The presumption, at all events, is against the election of an umpire by lot. Such a transaction should at least be fully explained. It should appear that each arbitrator exercised his judgment on the fitness of the person to be balloted for, and that the parties knew of the course about to be adopted." This case, as it now stands, is without the least trace of evidence of any kind going to show that the defendant, before the award was made, knew or had reason to suspect that the third arbitrator had been selected by chance. There is nothing, therefore, upon which a presumption that he consented to the selection of the third by chance, can rest.

The other question is: Was the refusal of the two arbitrators to hear the evidence, which the defendant asked leave to offer, such gross misbehavior as entitles him to a decree vacating the award?' The evidence was pertinent and material. No doubt can be entertained that if he had established the facts he asked leave to prove, by such a weight of evidence as would, notwithstanding all opposing evidence, have fully demonstrated their truth, that his proofs would have swept away the complainants' case, root and branch. Arbitrations are to be conducted upon the ordinary principles upon which other judicial inquiries are conducted. The parties have a right to be heard by their proofs. Their right, in this respect, is a primary right. It is founded in natural justice. "The principle," said Chief-Justice Spencer, in *Van Cortlandt* v. *Underhill, 17 Johns. 405, 411,* "is so fundamentally

Hart v. Kennedy.

just that it requires no adjudged cases to support it." He also said that a denial of it constituted gross and scandalous misbehavior. The doctrine, that the parties to an arbitration have a right to be heard by their proofs, is an established principle of the jurisprudence of this state. The court of errors and appeals, and also this court, adopted this principle as the rule of its judgment in *West Jersey R. R. Co.* v. *Thomas, 6 C. E. Gr. 205; 8 C. E. Gr. 431; S. C. on appeal, 9 C. E. Gr. 567.* The parties in that case agreed to submit the matters in difference between them to the award of two arbitrators, with power, in case the two could not agree, to select a third. The two, being unable to agree, selected the third, and then the three, without notice to the parties, and without affording them an opportunity of being further heard, proceeded secretly to make up their award. In a suit to set aside the award, both courts declared, that after the third arbitrator was chosen the parties had a right to adduce additional testimony and additional argument, and that unless such right was either clearly waived by the agreement, or by the conduct of the parties, notice of the appointment of the third arbitrator and an opportunity to be heard before him, by both proof and argument, were essential preliminaries to a valid award. The award was set aside on the ground that the arbitrators, in failing to give the parties an opportunity to be heard, by proof and argument, before the third arbitrator, had violated a principle of law founded in natural justice.

But it is contended that no such right existed in this case, for the reason that the parties, by their agreement, expressly relinquished it. The words of the agreement upon which this contention rests are: " The three persons so selected are to survey the ground, take levels and determine." I confess that I am wholly unable to discover anything in these words which will support even a surmise that the parties meant, by using them, to surrender one of the most valuable rights that a litigant, engaged in a dispute about a question of fact, holds, or that the parties intended to indicate, by these words, that they were willing that the rights about which they were disputing should be determined by a very unusual method of trial. Understood according to

Hart v. Kennedy.

their literal import, these words simply define certain special, and perhaps somewhat unusual, duties, which the arbitrators, in making up their judgment, were to perform, but they do not plainly say that the parties meant to give up so vital a right as the right to demonstrate, by proof, the justice and righteousness of their respective claims. Nor do I think they say anything of that kind by faint implication. A right so valuable to the parties and so essential to the accomplishment of justice, should not, in any case where the language, upon which the claim of waiver is based, is doubtful or equivocal, be held to have been surrendered. Nothing short of plain and clear words should be considered sufficient for that purpose. It appears to be entirely certain that the defendant did not understand that he had surrendered this right, for at the very first meeting of the arbitrators, as his pleadings aver, he asked permission to lay evidence before them, and subsequently renewed his application from time to time until the award was made. His conduct shows that, if he had given up this right, he did not understand what he was doing.

The complainants also insist that the defendant has so far ratified the award that he has lost all right to challenge its validity. This insistment is based on the following facts: The award was published to the parties on the 3d day of June, 1889; at that time the defendant had two thousand five hundred bushels of wheat in his mill which he wanted to grind; this he could not do if he lowered his dam; he therefore, on the same day that the award was promulgated, asked permission to have his dam remain as it was until the 1st day of July following, in order that he might grind his wheat, and the complainants gave the permission asked. The defendant says, by his pleadings, that he asked this favor of the complainants before he had had time to consult his counsel. He evidently acted in ignorance of his rights. The question is: Has the defendant estopped himself from attacking the award? An estoppel is the only ground upon which he can be deprived of the right to contest the validity of the award. So far as now appears, the complainants have lost nothing by granting this favor, nor are they in consequence, in any respect, in a worse situation than they would have been if they had refused it.

Miller *v.* Morristown.

:and insisted that the defendant should at once perform the award. As the case now stands, nothing whatever appears which would warrant the court in ·declaring that the defendant has estopped himself from attempting to impeach the validity of the award. *Wheaton* v. *Crane, 12 C. E. Gr. 368,* is directly in point, and ·must rule the decision of this case on this point.

As each litigant has succeeded in part and failed in part, neither will be allowed costs against the other.