199 N.J. Super. 266 (1985)
489 A.2d 682
MANCHESTER TOWNSHIP BOARD OF EDUCATION, PLAINTIFF-RESPONDENT-CROSS-APPELLANT,
v.
THOMAS P. CARNEY, INC., DEFENDANT-APPELLANT AND AMERICAN ARBITRATION ASSOCIATION, PHILIP MCGONEGAL, ANTHONY G. CATALDO AND EUGENE AMRON, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued October 29, 1984.
Decided February 5, 1985.
*268 Before Judges KING, DEIGHAN and BILDER.
A. Michael Barker argued the cause for appellant Thomas P. Carney, Inc. (Horn, Kaplan, Goldberg & Gorny, attorneys; A. Michael Barker, on the brief).
Thomas J. Gunning argued the cause for respondent-cross-appellant Manchester Township Board of Education (Sim, Sinn, Gunning & Fitzsimmons, attorneys; Thomas J. Gunning, on the brief).
The opinion of the court was delivered by DEIGHAN, J.A.D.
*269 On this appeal we are presented with the question of whether arbitrators improperly precluded rebuttal testimony and if so, whether the matter should be remanded to the same panel or a new panel of arbitrators or to the trial court for final disposition.
Defendant Thomas P. Carney, Inc. (Carney) appeals from an order vacating an arbitration award and remanding this matter to the American Arbitration Association (AAA) for a determination either to schedule a hearing de novo or to reopen this matter before the original panel. Carney seeks to reinstate the original award of the arbitrators. Plaintiff Manchester Township Board of Education (Board) cross-appeals from that portion of the judgment granting discretion to AAA to schedule a hearing de novo or to reopen the matter before the original panel, contending that the original panel should be disqualified from rehearing the matter.
On June 11, 1974 the Board entered into a contract with Carney for the construction of the high school. The contract contained an arbitration clause which required all disputes arising out of the contract to be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the AAA. The school was completed and dedicated in September 1976 but within a few months several structural problems developed, including extensive leaks throughout the building and openings and dead spots in the gymnasium floor. A dispute arose between the parties concerning the responsibility for repair of these problems.
The parties were unable to resolve their differences, consequently the Board filed a petition with the AAA for arbitration. Hearings were conducted at the high school for five days in July and August of 1982. The Board presented testimony of a builder and two written reports of an engineer who was unable to appear at trial. Carney's attorney agreed to defer cross-examination of the Board's engineer until he was able to appear *270 for cross-examination. Both the Board's witnesses, the builder and engineer, concluded that the flashings on the rising walls were improperly installed and did not conform to the architect's plans.
Carney produced an engineer who testified that the leaks were caused by an architectural defect, i.e., insufficient and improperly designed expansion joints in the roof. The expert also testified that even if the flashings were improperly installed the water would not have drained down the interior wall and could not have caused damages in areas of the ceiling far removed from the rising wall. He said the dead spots on the gymnasium floor were the result of low temperatures.
Robert Carney, who was on the construction site daily during the installation of the roof, testified that he pointed out to the architect's representative at the site, Don Hamnet, that there was some deficiency in the "neverstrol" flashing. Even though there was no written change order, Carney said that he and Hamnet agreed to change the plans and designs in accordance with the manner in which it is presently constructed.
After testimony was concluded on Friday, August 13, 1982 the hearings were continued to August 18 and 19, 1982. On August 16, 1982 the Board's attorney telegraphed Carney's attorney that a water infiltration test was scheduled for August 17, 1982 at 1:45 p.m. Shortly thereafter Carney's attorney advised that, rather than present further testimony, he decided to rest his case. Thereupon the Board's attorney advised that he planned to produce his engineer to rebut statements made by Carney's engineer and Robert Carney regarding the depths of the flashing and that he hoped to produce testimony of Don Hamnet, the architect's engineer mentioned by Robert Carney in his testimony the preceding Friday. Shortly thereafter on the same date the Tribunal Administrator of the AAA advised plaintiff's attorneys that the hearing was closed and no rebuttal testimony would be taken. Counsel for the Board objected and after further consultation with the arbitration panelists, the *271 AAA informed him that the panel would hear no rebuttal arguments. This was confirmed by letter.
On August 17, 1982 the water infiltration test was conducted as scheduled and this time professional photographs were taken. On the same date a written objection was made to the AAA by the Board's attorney protesting the arbitrators' preclusion of the offer of rebuttal testimony. On October 8, 1982 an award was made which denied the claim of the Board in its entirety. The Board filed this action to vacate the arbitration award on the ground that the arbitrators refused to hear evidence pertinent and material to the controversy, N.J.S.A. 2:24-8c. It also sought to terminate any further arbitration of the issues and to allow further disputes to be decided by the court. Alternatively, the Board sought to vacate the award and to schedule a de novo hearing before a different panel of arbitrators.
At the close of the plaintiff's case before the trial court in the present proceeding, Carney moved for a judgment of involuntary dismissal which was denied. After presenting testimony of its engineer, Carney's motion for a continuance to remand the matter to the arbitrators for findings of fact to ascertain the reasons for the arbitrators' decision was denied.
At the conclusion of a three-day hearing the trial judge found that the arbitrators refused to permit the Board to present pertinent and material rebuttal evidence; that the refusal was prejudicial to the Board, and that their refusal deprived the Board of its right to a full and fair hearing. The court vacated the award pursuant to N.J.S.A. 2A:24-8c., and remanded the matter to the AAA for a hearing de novo before a new panel of arbitrators or, in the discretion of the AAA, to resubmit the matter to the original arbitrators. Carney's subsequent motion for a new trial was denied. This appeal and cross-appeal followed.
On August 12, 1983 the AAA ruled that the matter would be resubmitted to the original panel. The Board protested. In *272 September 1983 the Chairman of the Arbitration panel resigned due to ill health. On September 26, 1983 the AAA requested counsel for a list of convenient dates for the arbitration hearings. The Board again protested but Carney's attorney insisted that arbitration proceed. On October 31, 1983 the AAA directed that the hearings continue notwithstanding the pendency of this appeal and directed a list of convenient dates to be submitted. Upon application of the Board, the trial judge restrained the AAA from rescheduling or conducting further hearings until final determination of this appeal.
Carney contends that the arbitrators properly exercised their discretion and there is no basis in law or in fact for a reversal of the award; that the proferred rebuttal proof is merely cumulative and redundant; that the trial court erred in failing to grant defendant's motion (a) for involuntary dismissal and (b) for a remand to the arbitrators for findings of fact. Lastly, it maintains that if the judgment is affirmed, the matter should be remanded to the original arbitration panel. The Board argues that the matter should not be remanded to AAA but rather the court should retain jurisdiction of the controversy but if remanded to the AAA it should be heard de novo by a new arbitration panel.
First we consider Carney's contention that there is no basis in law or in fact for a reversal of the award. We disagree. N.J.S.A. 2A:24-8 of the New Jersey Arbitration Act, 2A:24-1 et seq., provides:
2A:24-8. Vacation of award; rehearing.

The court shall vacate the award in any of the following cases:
* * * * * * * *
c. Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause being shown therefore, or in refusing to hear evidence, pertinent and material in the controversy, or of any other misbehaviors prejudicial to the rights of any party.
* * * * * * * *

*273 When an award is vacated and the time within which the agreement required the award to be made has not expired, the court may, in its discretion, direct a rehearing by the arbitrators.
The Construction Industry Arbitration rules marked into evidence provide in pertinent part:
29. Order of Proceedings

A hearing shall be opened by the filing of the oath of the arbitrator, where recognized, and by the recording of the place, time, and date of the hearing, the presence of the arbitrator and parties, and counsel, if any, and by the receipt by the arbitrator of the statement of the claim and answer, if any.
The arbitrators may, at the beginning of the hearing, ask for statements clarifying the issues involved.
The complaining party shall then present its claims, proofs and witnesses, who shall submit to questions or other examination. The defending party shall then present its defenses, proofs and witnesses, who shall submit to questions or other examination. The arbitrator may vary this procedure but shall afford full and equal opportunity to the parties for the presentation of any material or relevant proofs.

35. Closing of Hearings.

The arbitrator shall specifically inquire of the parties whether they have any further proofs to offer or witnesses to be heard. Upon receiving negative replies, the arbitrator shall declare the hearings closed and a minute thereof shall be recorded, if briefs are to be filed, the hearings shall be declared closed as of the final date set by the arbitrator for the receipt of briefs. If documents are to be filed as provided for in Section 32 and the date set for their receipt is later than that set for the receipt of briefs, the later date shall be the date of closing the hearing. The time limit within which the arbitrator is required to make an award shall commence to run, in the absence of other agreements by the parties, upon the closing of the hearings. [Emphasis supplied].
By applying the above statute and rules to the facts and circumstances of the instant matter, the trial judge found that the arbitrators acted improperly in refusing to accept further pertinent and material evidence from the Board and that the refusal was prejudicial to it.
He found precedent in Hart v. Kennedy, 47 N.J. Eq. 51 (Ch. 1890), that
[a]rbitrations are to be conducted upon the ordinary principles upon which other judicial inquiries are conducted. The parties have a right to be heard by their proofs. It is founded in natural justice. "The principle," said Chief-Justice Spencer, in Van Cortlandt v. Underhill, 17 Johns. 405, 411, "is so fundamentally just that it requires no adjudged cases to support it." He also said that a denial of it constituted gross and scandulous misbehavior. [Id. at 56-60].
*274 Hart concluded that "The doctrine, that the parties to an arbitration have a right to be heard by their proofs, is an established principle of jurisprudence of this State." Id. at 60; see also Kearny PBA Local # 21 v. Town of Kearny, 81 N.J. 208, 220-221 (1979) (reciting statutory grounds for setting aside an arbitration award); Local Union 560 v. Eazor Express, Inc., 95 N.J. Super. 219, 227 (App.Div. 1967) (while judicial review of arbitration awards is extremely narrow, the court, in dicta, recognized that a refusal to hear pertinent and material evidence warrants vacating awards).
In arguing that the arbitrators properly exercised their discretion and that there is no basis in law or fact for a reversal of the award, Carney points to AAA Rule 31:
31. Evidence

The parties may offer such evidence as they desire and shall produce such additional evidence as the arbitrator may deem necessary to an understanding and determination of the dispute. An arbitrator authorized by law to subpoena witnesses or documents may do so upon the request of any party, or independently. The arbitrator shall be the judge of the admissibility of the evidence offered and conformity to legal rules of evidence shall not be necessary. All evidence shall be taken in the presence of all arbitrators and all of the parties, except where any of the parties is absent in default or has waived his rights to be present.
Initially, Rule 31 in and of itself does not support Carney's position. Rule 29 of the Construction Industry Arbitration Act under the AAA Rules requires a full and equal opportunity to the parties for the presentation of any material or relevant proofs. Rule 35 requires the arbitrators to make inquiry of the parties whether they have any further proofs to offer or witnesses to be heard. Only upon receiving negative replies, may the arbitrators declare the hearing closed. N.J.S.A. 2A:24-8c mandates that an award be vacated where the parties are guilty of misconduct in "refusing to hear evidence, pertinent and material to the controversy ..." Case law further holds that the parties to arbitration are entitled to a full hearing. There was no discretion to be exercised by the arbitrators whether to permit rebuttal testimony. The precipitous termination of the arbitration hearing by the arbitrators denied *275 the Board this opportunity. The law and facts support the trial judge's reversal of the award.
Carney argues that the arbitrators were in a position to know whether the proffered rebuttal testimony would be relevant and material to their decision and also whether it was merely cumulative and redundant. It contends that the arbitrators properly closed the hearings following a review of the August 17, 1982 letter from the attorney for the Board. The simple answer to this is that the arbitrators decided to close the arbitration on August 16, 1982 before the letter of August 17, 1982 was even written.
In considering the same argument concerning the nature and quality of the testimony described in the letter of August 17, 1982, the trial judge commented:
And it was because of this conflict and because of the conflict in the testimony of the various witnesses that I think that it wasn't fair for Mr. Gunning [Board's attorney] to be cut off and not be allowed to at least present this testimony to the arbitrators.
The argument by Mr. Barker [Carney's attorney] is that it's up to the arbitrators to decide whether something is pertinent. Well, I think you really have to hear testimony or at least get into it to decide whether it is  pertinent.
A letter can't produce the entire testimony. Now, a letter is short. One page or two pages. And that you have to hear the testimony to come to that conclusion. Here, the arbitrators just said, no, we will not hear anymore testimony.
The letter of August 17, 1982 states that the rebuttal evidence which was to be submitted on August 18 and 19 included testimony of the Board's expert, Clyde Usiskin, to rebut the testimony of Robert Carney and Carney's expert, George Widas, and also included a water infiltration test and the testimony of the architect Donald Hamnet concerning the alleged agreements to change the installation of nevestrol flashing.
At the hearing before the trial judge on the proceedings to vacate the arbitration award, Donald Hamnet testified that he did not recall a conversation concerning the agreement to change the plans and specifications. Nevertheless, the nature of the testimony of this witness was not known at the time the *276 arbitration hearing was closed. As noted by the trial judge it is impossible for the arbitrators to conclude that the testimony is cumulative and redundant until the nature and significance of the evidence is offered. Their termination of the proceedings precluded any such attempt to rebut testimony or opinions by Carney's witnesses.
The only evidence on behalf of the Board by their expert Clyde Usiskin was a written report. He was certainly entitled to verbally articulate his differences with Carney's experts, to explain his opinion, to give reasons for differences of opinion, if any, and to give such other oral evidence as he deemed proper to bolster his opinion or to mitigate the opinions of Carney's experts. Furthermore, his credibility was put in issue by Robert Carney who testified on cross-examination as follows:
Q. There was other testimony with regard to this flashing, there was testimony by ... Birdsell and a report by a man named Usiskin that said they had done ten different spot checks, openings.
A. Yes.
Q. And they said that the counter flashing was only turned into the brick five-eighths of an inch instead of four inches.
A. Yes. I don't believe that at all.
Certainly, the Board's experts, particularly Usiskin who did not even testify in the first instance were entitled to justify, elaborate, bolster or explain this attack on their credibility and expertise.
We next consider whether the trial court erred in denying Carney's motion for a judgment of involuntary dismissal. R. 4:37-2(b), and its motion to remand the matter to arbitration for findings of fact. In light of the evidence which we have heretofore recited and after a review of the record the contention concerning the motion for judgment of involuntary dismissal is without merit. R. 2:11-3(e)(1)(E). As stated in Dolson v. Anastasia, 55 N.J. 2 (1969), the judicial function on a motion for an involuntary dismissal under this Rule "is quite a mechanical one. The trial court is not concerned with the *277 worth, nature or extent (beyond a scintilla) of the evidence, only its existence, viewed most favorably to the party opposing the motion." Id. at 5-6.
Further we reject Carney's contention that the trial judge erred in denying its motion to remand the case to the arbitrators for findings of fact as to the basis of their award. Carney cites no authority for this contention; on the other hand there is authority that the arbitrators cannot be deposed as to the merits of their decision, Korshalla v. Liberty Mutual Ins. Co., 154 N.J. Super. 235 (Law Div. 1977), nor is there any justification to compel arbitrators, who are not otherwise required to do so, to set forth their findings of fact and conclusions of law. Fred W. Donnelly, Inc. v. Unit I Lawrence, 171 N.J. Super. 30, 33-34 (App.Div. 1979), certif. den. 82 N.J. 298 (1980).
After the arbitration award in the present proceedings, the Board instituted a suit against the architect in the Superior Court, Law Division. The architects in turn instituted a third-party action against the contractor, Carney, apparently for indemnity and contribution. The Board is faced with a dilemma: It obviously has a problem with the defective building, in the arbitration proceedings the contractor Carney claimed the plans and specifications were defective or at least were changed and the Board was precluded from recovery. Now, if the Board is unsuccessful in its action against the architect, it will have no recourse for the evident defects in its building.
In face of this dilemma, the Board contends that on remand the court should retain jurisdiction of the controversy. Obviously, the Board desires to consolidate these proceedings with the pending proceedings in the Superior Court, Law Division to protect itself against inconsistent decisions. In support of this proposition the Board cites and relies upon LaStella v. Garcia Estates, Inc., 128 N.J. Super. 173 (App.Div. 1974), rev'd on other grounds, 66 N.J. 297 (1975); Goerke Kirch Holding Co. v. Goerke Kirch Co., 116 N.J.L. 427 (E. & A. 1936); McKeeby *278 v. Arthur, 7 N.J. 174 (1951). We do not find that the authorities cited by the Board stand for that proposition as contended by the Board. As noted in McKeeby v. Arthur, supra, the authority of the appointed arbitrators terminated with the completion of the award notwithstanding the award as completed was not valid and the lower court, in its discretion did not direct a hearing. Id. at 179; N.J.S.A. 2A:24-8. Here, the trial court in fact directed a rehearing by the arbitrators.
In LaStella, this court held that where the arbitration failed and the terms of the submission do not preclude it, the matters may be resubmitted either to the same or new arbitrators or may leave the parties to judicial resolution of the dispute. Id. 128 N.J. Super. at 177-178. By dictum this court stated that the authority to order a matter resubmitted to arbitration "includes the power to require the appointment of new arbitrators." Ibid. (Emphasis supplied). However, in LaStella the ground for vacatur was pursuant to N.J.S.A. 2A:24-8(d) ("Where the arbitrators exceeded or so imperfectly executed their powers that a mutual, final and definite award upon the subject matter submitted was not made.") (Emphasis supplied). While LaStella did indicate that on remand the matter may be submitted to a court instead of arbitration, but when the award was vacated, the time within which the arbitrators were to have made an award had expired. 2A:24-8; LaStella 128 N.J. Super. at 177-178.
The basic reason why the court cannot compel litigation in a trial court instead of submission to arbitration is that a contractual right to arbitrate cannot be abridged in favor of consolidation with judicial proceedings. Hudik-Ross, Inc. v. 1530 Palisade Ave. Corp., 131 N.J. Super. 159, 168 (App.Div. 1974). The court in Hudik-Ross refused to find the arbitration clause enforceable "because issues settled thereby may conceivably have an effect upon pending law suits." Id. at 168. At that juncture in the proceedings, collateral estoppel with respect to particular controversies could not be assessed. See *279 also Rush Urology Assoc. v. Kuhn, Smith & Harris, 193 N.J. Super. 389 (App.Div. 1984).
The architect's contract with the school board apparently contains no arbitration clause; if it did, these actions could be consolidated into a single arbitration proceeding. Our courts find no difficulty in consolidating arbitration proceedings where all parties are signatory to arbitration. In Polshek v. Bergen Cty. Iron Works, 142 N.J. Super. 516 (Ch.Div. 1976), the two proceedings had a common thread of issues and facts arising out of a single project. The Chancery Court consolidated the two proceedings "when and where there is no showing of prejudice, consolidation is a practical, economical, convenient and preferred method of proceeding in the matter before the court." Id. at 529. The procedure was approved in William C. Blanchard Co. v. Beach Concrete Co., 150 N.J. Super. 277, 300 (App.Div. 1977), certif. den. 75 N.J. 528 (1977). We have also upheld the right of the arbitration forum to submit to arbitrators the issue of whether two separate arbitration proceedings involving contractual disputes among the owner, general contractor and sub-contractor, all arising out of the same construction project and having common factual issues, should be consolidated for arbitration. Kalman Floor Co., Inc. v. Jos. L. Muscarelle, Inc., 196 N.J. Super. 16, 29-33 (App.Div. 1984).
The problem confronting the Board is not new. In Ohio Cas. Ins. Co. v. Benson, 87 N.J. 191 (1981), a case involving coverage under uninsured motorist which is primarily determined in a court of law, and liability and damages which by contract must be arbitrated, the Supreme Court noted that: "Courts have asserted that a limited arbitrability approach can conflict with a strong public policy of clogging the courts with piecemeal litigation." In Rush Urology Assoc. v. Kuhn, Smith & Harris, supra, we recognized that there are "serious problems by using arbitration to resolve some aspects of a single complex controversy and using litigation to resolve others."
*280 This problem of adjudication in arbitration and in the courts of factual and legal rights arising out of the same transaction has haunted the courts for years. In Rosenthal v. Berman, 14 N.J. Super. 348 (App.Div. 1951), Judge Bigelow quoted from the English case of Turnock v. Sartoris, L.R. (1889), 43 Ch.D. 150 (C.A.), which noted:
It cannot be right to cut this litigation into two actions, one to be tried before the arbitrator and the other to be tried elsewhere. [Id. at 352].
This same judicial limit was expressed in William C. Blanchard Co. v. Beach Concrete Co., 121 N.J. Super. 418, 423 (Ch. Div. 1972) (Blanchard I) and William C. Blanchard Co. v. Beach Concrete Co., supra, 150 N.J. Super. at 277, 287-288. (Blanchard II).
In Blanchard II, after noting that the litigation had been pending almost seven years, Judge Pressler commented on the complex procedural history of the case and the protracted wasteful fragmentation of the judicial process and concluded:
In complex multi-party, multi-issue litigation the problem lies in a virtually inherent confrontation between inconsistent and contradictory rights  the primary right of some of the litigants to arbitrate and the primary right of others to litigate. It can be seriously questioned whether it is possible to accommodate one without defeating the other... It may be, however, that the solution in view of the terms of the Arbitration Act must come from the Legislature. We view the problem as one requiring prompt attention and recommend its consideration by appropriate agencies of government. [Id. at 300-301].
Yet, despite the problem, no solution has evolved.
Carney contends, that in the event the judgment of the trial court is affirmed, then the matter should be remanded to the original arbitrators for further proceedings. We are required to determine whether on remand the matter should be determined by the same panel or a new panel or whether, as did the trial judge, this determination should be left to the discretion of the AAA.
Pursuant to N.J.S.A. 2A:24-8, when an arbitration award is vacated, "the court may, in its discretion, direct a rehearing by *281 the arbitrators." This is identical to a counterpart in the Federal Arbitration Act. See 9 U.S.C. § 10. The statute contains no express provision for remand to a new panel of arbitrators; use of language "the arbitrators" could raise an inference that the drafters may not have intended such an option. Under § 12(c) of the Uniform Arbitration Act (UAA) "the Court may order a rehearing and determination of all or any of any of the issues, before the arbitrators chosen as provided in the agreement" or "the Court may order a rehearing before the arbitrators who made the award or their successors appointed in accordance with § 3 [of the UAA]."
New Jersey case law is sparse on this issue. In LaStella v. Garcia, supra, this court held that where arbitration fails and terms of the submission do not preclude it, a court may either order the matter resubmitted to the same or new arbitrators or may leave the parties to judicial resolution of the dispute. 128 N.J. Super. at 177-178. As noted above, LaStella involved a different ground for vacatur, specifically that contained in 2A:24-8(d); nevertheless, by dictum we stated that a court's authority to order a matter resubmitted to arbitration "includes the power to require the appointment of new arbitrators." Id. (Emphasis supplied).
The issue is somewhat analogous to our court rules on judicial disqualification. R. 1:12-1(d) provides: "The judge of any court ... shall not sit in any matter, if he has given his opinion upon a matter in question in the action." In In re Guardianship of R., G. and F., 155 N.J. Super. 186 (App.Div. 1977), Judge King held that the rule applied where the original judge "already engaged in weighing the evidence and has rendered a conclusion on the credibility of the ... witnesses." Id. at 195. Upon remand we directed that the case be assigned to a new trial judge. Id. It has been suggested that while R. 1:12-1(d) expressly applies only to judicial disqualification, it may be held applicable to quasi-judicial administrative proceedings. *282 Pressler, Current N.J. Court Rules, Comment R. 1:12-1(d) at 96.
The conduct of arbitrators who refuse to hear evidence has been characterized by the statute as "misconduct" and prejudicial "misbehavior." N.J.S.A. 2A:24-8c., Kearny PBA Local # 21 v. Town of Kearny, supra, 81 N.J. at 220, and "scandalous misbehavior", Hart v. Kennedy, supra, 47 N.J. Eq. at 60. The statute does not provide in such cases that the matter be remanded merely to supplement the record  "[t]he court shall vacate the award ...." (Emphasis supplied). Judge Wiley determined that the award should be vacated but that the matter should be remanded to AAA to determine in its discretion whether to impanel new arbitrators or to remand the matter to the original arbitrators. We agree that there is substantial evidence and grounds to support a vacatur of the award but disagree that the matter should be reheard by the name panel of arbitrators.
Here, it is obvious that the original arbitrators "already engaged in weighing the evidence and ... rendered a conclusion on the credibility of the ... witnesses." They predetermined that it would be of no avail to the Board to present rebuttal witnesses even before the Board had the chance to present its position. As noted, they prematurely foreclosed the Board from presenting rebuttal witnesses without even giving it a chance to be heard. Having done so, they then gave no further consideration after receiving the letter of August 17, 1972 from the attorney for the Board. Having weighed the evidence and reached a conclusion before all the evidence was heard it can hardly be argued that the same arbitrators could have an open mind in reconsidering their determination after hearing the rebuttal witnesses. We therefore hold that on remand to the trial court the matter be remanded to the AAA with directions to impanel new arbitrators.
Modified and affirmed as modified.