262 N.J. Super. 45 (1993)
619 A.2d 1037
IN THE MATTER OF THE ARBITRATION BETWEEN TRETINA PRINTING, INC. AND HI-TECH PROPERTIES, A GENERAL PARTNERSHIP, AND JAN TRETINA AND OLGA TRETINA, INDIVIDUALLY, PETITIONERS-APPELLANTS/CROSS-RESPONDENTS,
v.
FITZPATRICK & ASSOCIATES, INC., RESPONDENT-RESPONDENT/CROSS-APPELLANT. FITZPATRICK & ASSOCIATES, INC., PLAINTIFF-RESPONDENT/CROSS-APPELLANT,
v.
TRETINA PRINTING CO., INC., HI-TECH PROPERTIES, A GENERAL PARTNERSHIP, AND JAN TRETINA AND OLGA TRETINA, INDIVIDUALLY, DEFENDANTS-APPELLANTS/CROSS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued December 2, 1992.
Decided February 9, 1993.
*47 Before Judges KING, BRODY and LANDAU.
George F. Mackey argued the cause for appellants/cross-respondents (Mackey & Moore, attorneys; Mr. Mackey and Gary J. Mueller, of counsel and on the brief).
Robert Hedinger argued the cause for respondent/cross-appellant (Peckar & Abramson, attorneys; Mr. Hedinger and Caroline M. Rossi, on the brief).
The opinion of the court was delivered by BRODY, J.A.D.
Both parties appeal from a judgment confirming an arbitration award as modified by the trial judge. The dispute arose under an "Owner-Construction Manager" contract between Tretina Printing, Inc. (Tretina) and Fitzpatrick & Associates, Inc. (Fitzpatrick). We hold that the arbitrator imperfectly executed his powers upon the subject matter submitted to him and that it is too late to direct a rehearing because the time within which he was empowered by the parties to make an award has expired.
Tretina engaged Fitzpatrick to manage the construction of a building to house Tretina's printing business and rental office space. Fitzpatrick guaranteed that Tretina's total cost would *48 not exceed $2,566,050, the Guaranteed Maximum Price (GMP). Tretina agreed to pay Fitzpatrick a $200,000 Construction Manager's Fee, to be included in the total cost, and 30% of any saving if the total cost is less than the GMP. The parties agreed that instead of paying Fitzpatrick the fee in monthly installments, Tretina would pay the entire fee with "an interest rate of 11.5%" after the work was completed. Significantly, the contract provided that the total cost included the "cost of corrective work." Fitzpatrick agreed to absorb any portion of the total cost that exceeded the GMP.[1]
The contract provides that all disputes "shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association...." Fitzpatrick submitted the parties' disputes to arbitration when Tretina failed to pay requisition # 15 in the amount of $45,083, which had been approved by Tretina's architect. By then Tretina had paid Fitzpatrick $2,119,819, which was $446,231 less than the GMP. Thus, under the basic terms of the contract, when the parties went into arbitration Tretina was liable for up to $446,231 of the remaining costs of construction, which included the cost of corrective work and Fitzpatrick's $200,000 fee.
After conducting twenty-one arbitration sessions over the period of a year, the arbitrator issued a written award in a form that has the appearance of resolving each of Fitzpatrick's and Tretina's contract claims by either assigning a dollar amount to each or stating that the claim is "denied." The "TOTAL AWARD TO FITZPATRICK" was $269,912.34, and the "TOTAL AWARD TO TRETINA" was $530,180, leaving a "TOTAL NET AWARD TO TRETINA" of $260,267.66. After making several adjustments for open items that the arbitrator had determined it would be premature for him to decide, the trial *49 judge confirmed the net award  but reduced it by $201,148, the sum noted in requisition # 15 as accumulated "retainage."
Tretina appeals, claiming that the judge should not have reduced the award. Fitzpatrick cross-appeals claiming that the award is so defective that the judge should have vacated it.
The Supreme Court has recently defined a court's limited authority to review an arbitration award in the private sector. "We sit not as an appellate court to review arbitral decisions of law but only to safeguard against interpretive error that may be characterized on its face as gross, unmistakable, undebatable, or in manifest disregard of the applicable law and leading to an unjust result." Perini Corp. v. Greate Bay Hotel & Casino, Inc., 129 N.J. 479, 496, 610 A.2d 364 (1992). From our review of the award, the fundamental provisions of the parties' contract, and the claims submitted by Fitzpatrick to the arbitrator, we conclude on the basis of the Perini standard that we must vacate the award.
By specifying how he arrived at the award, the arbitrator has enabled us to observe how he manifestly disregarded the heart of the parties' contract.
To begin with, the award ignores the Guaranteed Maximum Price, which is at the core of the contract and gives it its distinctive character. The contract requires that Tretina absorb all costs, including costs of correction, up to the GMP. As we previously noted, that means that based on a GMP of $2,566,050 Tretina must absorb $446,231 of the unpaid costs, including costs of correction and Fitzpatrick's fee, before costs may be charged to Fitzpatrick. Accepting for the moment the correctness of the itemization in the award, that means that the $269,912.34 that the arbitrator awarded Fitzpatrick is $176, 318.66 short of what Tretina is contractually obliged to pay Fitzpatrick. Crediting Fitzpatrick with the full $446,231 reduces the total net award to Tretina to $83,949.
*50 As a general rule under the contract, once Tretina pays the GMP, Fitzpatrick must absorb all additional costs. Thus, except as noted below, Fitzpatrick is not entitled to be paid claims, however valid, that the arbitrator did not award in full or omitted altogether from the award. Such omissions include full payment of the "retainage" and requisition # 15.
However, the contract contains several significant exceptions to the general rule. One exception that entitles Fitzpatrick to payment of more than the original GMP is based on Article 9 of the contract, which provides for adjusting the GMP to reflect authorized changes in the project. We note, for instance, that the award contains credits to Fitzpatrick totalling $73,701.37 for items found in Change Order # 3. That change order, not yet accounted for in requisition # 15, appears to have produced a post-contract authorized increase in the cost of the project entitling Fitzpatrick to a corresponding increase in the GMP.
We also note that the arbitrator awarded Fitzpatrick $68, 710.97 for "Delays by owner." Section 7.2.2 of Article 7 of the contract provides that "For delays in the Project not the responsibility of the Construction Manager, there will be an equitable adjustment in the fee to compensate the Construction Manager for his increased expenses." It may be equitable for Tretina to pay Fitzpatrick an additional fee for owner-caused delay damages even if doing so will exceed the GMP. We cannot tell if the arbitrator would have so concluded had he properly considered the matter.
There may be other items payable by Tretina above the GMP, such as the 11.5% interest to Fitzpatrick provided for in Article IIX of the May 29, 1987 rider to the contract for the delay in paying his fee until after the work is completed.
The arbitrator completely omitted mention in the award of other submitted claims that may be payable to Fitzpatrick in addition to the GMP. Some of the claims are in an accounting entitled "Summary of Claims" that Fitzpatrick submitted to the arbitrator. We must assume that the arbitrator overlooked *51 these claims because he neither made an award for them nor expressly denied them as he did others. These omitted claims include claims for delay damages that, as noted above, may be payable to Fitzpatrick in addition to the GMP. For instance, Fitzpatrick sought owner-caused delay damages of $55,602, with $7,643 interest, for "concrete work" and "masonry work."
We are also given a copy of a list of additional claims more fully explained in a report prepared by Fitzpatrick's expert that was presented to the arbitrator but not made part of the record before us. We are told that the report details 62 owner-caused delay days related to interior finishes, the main lobby stairway, and late payments. Although he omitted reference to these claims in the award, the arbitrator allowed delay damages for similar claims at the rate of $724.64 a day. Thus those omitted delay damages could total $44,927.68.
We do not consider awards that presumably reflect the arbitrator's judgment and are therefore beyond the scope of judicial review. However, some of the arbitrator's awards to Tretina are unquestionably contrary to the evidence. "[A]rbitrators may not make an award that is wholly bereft of evidential support." Perini, supra, at 491, 610 A.2d 364.
For instance, a change order calls for a six-inch thick concrete loading dock. Tretina's expert testified that it would cost $21,800 to rebuild the loading dock because as built it may not permit sufficient clearance after sprinkler heads are installed. The arbitrator allowed Tretina the full $21,800 even though the expert acknowledged that he based his estimate on one-foot thick concrete. Also, as the result of labor disputes on the job, glass and cables were broken by vandals. The arbitrator awarded Tretina $10,000 for the replacement of the glass and $2,675 to repair the cables even though the contract required Tretina to carry casualty insurance for such losses. When asked whether he had filed an insurance claim, plaintiff Jan Tretina testified, "Not yet."
*52 Fitzpatrick contends that the award has other significant defects, but we have limited ourselves to those that are "gross, unmistakable, undebatable, or in manifest disregard of the applicable law and leading to an unjust result." Perini, supra, at 496, 610 A.2d 364. Tretina defends none of these defects in its brief.
The Arbitration Act, N.J.S.A. 2A:24-1 to -11, provides two judicial remedies when there is a defective award: vacation of the award (with the option of remanding to the arbitrator for additional hearings) or modification or correction of the award.
The relevant portion of N.J.S.A. 2A:24-8 that authorizes vacating an award is the following:
The court shall vacate the award in any of the following cases:
a. Where the award was procured by corruption, fraud or undue means;
* * * * * * * *
d. Where the arbitrators exceeded or so imperfectly executed their powers that a mutual, final and definite award upon the subject matter submitted was not made.
When an award is vacated and the time within which the agreement required the award to be made has not expired, the court may, in its discretion, direct a rehearing by the arbitrators.
The Perini standard for testing an award is based on the "undue means" and "imperfectly executed their powers" language of Section 8. Perini, supra, at 494, 610 A.2d 364.
Authorization to modify an award is found in N.J.S.A. 2A:24-9, which provides:
The court shall modify or correct the award in any of the following cases:
a. Where there was an evident miscalculation of figures or an evident mistake in the description of a person, thing or property referred to therein;
b. Where the arbitrators awarded upon a matter not submitted to them unless it affects the merit of the decision upon the matter submitted; and
c. Where the award is imperfect in a matter of form not affecting the merits of the controversy.
The court shall modify and correct the award, to effect the intent thereof and promote justice between the parties.
Section 9 does not authorize us to modify or correct this award because the award ignores the basic contours of the parties' contract, decides some submitted disputes contrary to *53 the evidence, and completely fails to decide others. These defects are not merely mathematical miscalculations and their ultimate resolution surely affects the merits of the controversy. Although we described some of the defects in the award in dollar amounts, those amounts are merely descriptive and do not represent findings by us of actual sums that may have been found due if properly considered by a fact finder.
We must vacate the award pursuant to Section 8. See In re Arbitration Between Mary Harris and William Harris, 140 N.J. Super. 10, 354 A.2d 704 (App.Div. 1976).
The remaining question is whether we exercise our discretion under Section 8 to direct a rehearing by the arbitrator.[2] The short answer is that the statute leaves us no discretion in this case. Section 8 gives a court discretion to order a rehearing before the arbitrator only "[w]hen an award is vacated and the time within which the agreement required the award to be made has not expired...." That time has long since expired. Rule 41 of the Construction Industry Arbitration Rules of the American Arbitration Association requires that an award be made "not later than thirty days from the date of closing the hearings." See Zervos v. Freedman Props. Ltd., 223 N.J. Super. 599, 602, 539 A.2d 336 (Ch.Div. 1987).
This award was rendered July 30, 1991. The trial judge modified and confirmed the award November 25, 1991, four months later. Even if the confirmation had been a vacation, it would have been made more than thirty days after the award and therefore surely more than thirty days from the date of the closing of the hearings.[3]
*54 Under common law, an arbitrator loses authority to act after the deadline that the parties, by their agreement, had given him or her to make an award. Goerke Kirch Co. v. Goerke Kirch Holding Co., 118 N.J. Eq. 1, 5, 176 A. 902 (E. & A. 1935). Section 8 codifies the common-law rule when an award is vacated:
The Arbitration act referred to declares this fundamental [common-law] principle. It provides ... that "where an award is vacated and the time, within which the agreement required the award to be made, has not expired, the court may, in its discretion, direct a rehearing by the arbitrators." P.L. 1923 p. 293. [Ibid.]
We are therefore without authority to order a rehearing before the arbitrator.
We would not order a rehearing before the arbitrator even if we had the discretion to do so. There is a reasonable basis for Fitzpatrick's concern that the arbitrator's ability to reconsider the evidence in light of its theory of recovery has been compromised because his award departed so markedly from the subject matter of the dispute submitted, and unaccountably failed to decide substantial and relevant factual issues that Fitzpatrick had submitted. See Manchester Tp. Bd. of Ed. v. Thomas P. Carney, Inc., 199 N.J. Super. 266, 280-82, 489 A.2d 682 (App.Div. 1985) where we refused to order a rehearing before the same arbitrators because they had decided factual issues after refusing to hear rebuttal evidence.
A California court, interpreting an arbitration statute similar to ours, reached the same conclusion in a case where an arbitrator merely failed to decide one of the issues submitted:
This is not a case where the arbitrator has found upon an issue not submitted to him and where his award may be modified by the court by striking therefrom the portion which attempts to make an award outside of the submission; but it is a case where the arbitrator has failed to find upon all of the issues submitted to him, with the result that "a mutual, final and definite award, upon the subject matter submitted" has not been made. In such a case there has, in reality, been no award, and the attempted award must be vacated as a whole, and the matter left standing as if it had not been heard by the arbitrator. [Citation omitted.] [Film Technicians of the Motion Picture Industry, Local 683, et al. v. Color Corporation of America, 141 Cal. App.2d 553, 297 P.2d 86, 88 (Cal.Ct.App. 1956)]
*55 See also Samuel Kirshbaum Fabrics Corp. v. L. & G. Greenfield, Inc., 80 N.Y.S.2d 443 (Sup.Ct. 1948).
The judgment confirming the arbitration award as modified is reversed and the award is vacated.
NOTES
[1] We omit, for the moment, reference to various adjustments to the GMP provided in the contract for such contingencies as delays, agreed-upon modifications, and late payment of Fitzpatrick's fee.
[2] Tretina asks that we remand the matter to the arbitrator for further findings. Fitzpatrick asks that we vacate the award, after which it will initiate a new arbitration before a different arbitrator.
[3] We have not been told when the hearings closed or whether the parties expressly or impliedly waived the thirty-day period to allow the arbitrator more time to fashion his award.