871 A.2d 140

ELIZABETHTOWN WATER COMPANY, PLAINTIFF–APPELLANT,
v. WATCHUNG SQUARE ASSOCIATES, LLC, AND FIDELITY
LAND DEVELOPMENT CORPORATION, DEFEN-
DANTS/THIRD–PARTY PLAINTIFFS–RESPONDENTS, v. VOL-
LERS EXCAVATING & CONSTRUCTION, INC., THIRD–PARTY
DEFENDANT/FOURTH–PARTY PLAINTIFF–APPELLANT, v.
SALVATORE DAVINO, EDWARD D. MACEIKO, MORETRENCH
AMERICAN CORPORATION, MELICK–TULLY ASSOCIATES,
P.A. MARCHETTA, A.I.A., MENLO ENGINEERING ASSOCI-
ATES, INC., AND TRAVELERS INSURANCE COMPANY,
FOURTH–PARTY DEFENDANTS.

Superior Court of New Jersey
Appellate Division

Submitted March 3, 2005—Decided April 20, 2005.

Before Judges STERN, COBURN and GRAVES.

*Pitney Hardin,* attorneys for appellant Elizabethtown Water Company (*Robert G. Rose* and *Karen L. Alfieri,* on the brief).

*Sheak & Korzun,* attorneys for appellant Vollers Excavating & Construction, Inc. (*J. Charles Sheak* and *Deborah I. Hollander,* on the brief).

*Buonocore & Trevisan,* attorneys for respondent Watchung Square Associates, LLC (*Thomas A. Buonocore,* of counsel; *Mr. Buonocore* and *Rosemary Gencarelli,* on the brief).

*Borowsky & Borowsky,* attorneys for respondent Travelers Insurance Company (*Frank E. Borowsky,* on the brief).

The opinion of the court was delivered by

COBURN, J.A.D.

In these back-to-back, interlocutory appeals, which we have consolidated for purposes of this opinion, we agreed to address three procedural questions for parties involved in related litigation pending concurrently and as a matter of right in arbitration and in court. The questions arose because the factual and legal issues in both tribunals concern performance of contracts for a large construction project for which some of the contracts require arbitration, while others do not. The questions are: whether the lawsuit should have been stayed pending the arbitration; whether a defendant in the lawsuit was obliged to litigate its third-party lawsuit claim in the pending arbitration, which involved, among others, the third-party lawsuit defendant; and whether discovery in the lawsuit of a partial settlement agreement between two of the arbitrating parties, only one of which was involved in the lawsuit, was appropriate.

The principal parties in this complex, multi-party, multi-issue, multi-forum litigation are: the property owner, Watchung Square Associates, LLC, and its management company, Fidelity Land Development Corporation ("WSA"); the general contractor, Joseph A. Natoli Construction Corporation ("Natoli"); the excavator, Vollers Excavating and Construction, Inc. ("Vollers"); and the water supply company, Elizabethtown Water Company ("Elizabethtown").

In early August 1999, Natoli agreed to construct a large shopping center for WSA on its Watchung property. In late November 1999, Natoli subcontracted with Vollers for excavation and site work. Both contracts required that all disputes were to be resolved by arbitration.

On August 21, 1999, Elizabethtown became involved in this project. It agreed with WSA to reroute about 1000 feet of water main through the construction site, and it hired Vollers to perform the excavation and other work required to accomplish the relocation. Neither of those contracts required arbitration.

In mid-February 2000, the slope Vollers was cutting failed in or near the area where the relocated water main was to be run up the mountain slope to connect with an existing Elizabethtown water main. This required a further relocation of the water main at additional expense. Subsequent slope failures occurred along the length of the mountain.

WSA's largest claims were based on the problems it experienced as a result of the slope failures. The critical issue is whether Vollers or WSA was responsible. If Vollers was responsible, the remaining issue is: whether it caused the initial failure while working on the slope as a subcontractor for Natoli, with which it had an arbitration agreement; while working on the slope for Elizabethtown under the water main relocation contracts between WSA and Elizabethtown and between Elizabethtown and Vollers, which did not provide for arbitration; or whether it caused multiple slope failures while working on both projects.

Numerous disputes arose between WSA and Natoli, and in January 2002, WSA terminated their contract.

The procedural maneuvering has been extremely complex. For clarity, we omit reference to filings that appear to be peripheral to the issues at hand. Elizabethtown acted first by filing the captioned Law Division action against WSA for approximately $130,000 in unpaid invoices it claimed were due under the relocation contract. WSA counterclaimed, alleging that the work done for Elizabethtown by Vollers had caused the initial slope failure, resulting in over $11 million in damages. Elizabethtown filed an amended complaint, increasing its demand, and both Elizabethtown and WSA impleaded Vollers as the party responsible for the slope failure. The fourth-party defendants were added later based, in part, on allegations that they were responsible for the slope failures.

In the meantime, WSA filed a demand for arbitration against Natoli, Vollers, and another company. The damages sought included the over $11 million claimed in the lawsuit. Shortly thereafter, Vollers filed a lien foreclosure action in Somerset County against WSA, Natoli, and others. That case was resolved by an order staying the claims of parties not subject to arbitration and directing WSA, Natoli, Vollers and others to resolve their disputes in the arbitration.

During the arbitration, Natoli and Vollers entered into a written contract, which the parties have called the "Liquidating Agreement." WSA asserts that it "is apparently a document ... [which] may contain admissions by either party relevant to their acts or omissions...." Vollers describes it as a "joint defense agreement." The arbitrators denied WSA's demand for discovery of that agreement.

When we granted leave to appeal, the arbitrators had already conducted over 40 hearings.

The following events in the Morris County Law Division led to this appeal. Elizabethtown asked for a stay of the lawsuit it had

instituted pending the outcome of the arbitration among the other primary parties. But, to be clear, we note that what Elizabethtown wanted to achieve was not a delay of its collection action. Rather, it was willing to have that matter delayed because it wanted to put off defending against WSA's $11 million counterclaim, which asserted that Vollers, acting on Elizabethtown's behalf pursuant to the contract between it and WSA, had caused the initial slope failure. The motion was denied, and we granted leave to appeal. We reverse that order in the interests of judicial economy and to avoid the confusion and possibly inconsistent results that could result from concurrent litigation before both tribunals.

Vollers asked for an order requiring WSA to bring the third-party claim it had asserted in the Law Division against Vollers in the pending arbitration. The motion was denied, and we granted leave to appeal. We affirm because that claim arises under contracts that do not require arbitration. In other words, Elizabethtown cannot be compelled to arbitrate the counterclaim by WSA or its third-party claim for indemnification against Vollers, both arising out of the initial slope failure, and therefore, WSA must pursue its counterclaim against Elizabethtown and its third-party complaint against Vollers, which arises out of that action, in the Law Division.

We also granted Vollers leave to appeal from an order requiring it to give WSA a copy of the Liquidating Agreement. We reverse because the order contradicts the arbitrators' ruling and because it is premature in light of our decision staying the lawsuit.

"A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." *Manalapan Realty, L.P. v. Tp. Comm. of Manalapan,* 140 *N.J.* 366, 378, 658 *A.*2d 1230 (1995) (citations omitted). Our review of such decisions is plenary. *Del Piano v. Merrill Lynch,* 372 *N.J.Super.* 503, 507, 859 *A.*2d 742 (App.Div. 2004) (citations omitted).

The purpose of Elizabethtown's request for a stay, as we have noted, was to put off litigation of WSA's counterclaim in the Law Division pending the outcome of the arbitration. Elizabethtown hopes that the arbitrators will determine either that WSA was responsible for all the slope failures, or that Vollers caused all the slope failures while working for Natoli and not while working for Elizabethtown. WSA, on the other hand, wants to pursue its slope failure claims against Natoli and Vollers in the arbitration, while at the same time pursuing in the Law Division its counter-claim that Elizabethtown, under its contract with Vollers, was responsible for the first slope failure. However, as we have noted, the monetary damages WSA seeks in both proceedings at least overlap substantially, and may be the same.

In *Manchester Tp. Bd. of Educ. v. Thomas P. Carney, Inc.*, 199 *N.J.Super.* 266, 489 *A.*2d 682 (App.Div.1985), we observed that the "problem of adjudication in arbitration and in the courts of factual and legal rights arising out of the same transaction has haunted the courts for years." *Id.* at 280, 489 *A.*2d 682. Obviously, fragmentation of the litigation when some matters are subject to arbitration, while others are not, is inconsistent with the purposes of the entire controversy doctrine. *Wm. C. Blanchard Co. v. Beach Concrete Co., Inc.*, 150 *N.J.Super.* 277, 292–94, 375 *A.*2d 675 (App.Div.), *certif. denied*, 75 *N.J.* 528, 384 *A.*2d 507 (1977). But such fragmentation is often unavoidable when arbitration and litigation rights conflict. *Ibid.; Cf. Dean Witter Reynolds, Inc. v. Byrd*, 470 *U.S.* 213, 105 *S.Ct.* 1238, 84 *L.Ed.*2d 158 (1985).

■ No New Jersey case provides an answer to the question of whether the lawsuit should have been stayed in the circumstances presented by this case. In *Rosenthal v. Berman*, 14 *N.J.Super.* 348, 82 *A.*2d 455 (App.Div.1951), which involved arbitral and non-arbitral claims, we noted that the question of whether the lawsuit should be stayed pending arbitration was a matter of discretion, *id.* at 352, 82 *A.*2d 455, adding that

[c]are must be taken to prevent a party who has agreed to arbitrate from avoiding his bargain by dragging in extraneous issues and unnecessary parties. On the

other hand, a stay should not be granted as to any of the parties where the litigation cannot be severed without unduly increasing the cost of justice, or causing other hardship to the parties.

[*Ibid.*]

And in *Blatterfein v. Larken Assocs.*, 323 *N.J.Super.* 167, 732 *A.*2d 555 (App.Div.1999), we noted without disapproval that the trial court had stayed the lawsuit, which involved some issues that were outside the arbitration agreement, and some parties who were not obliged to arbitrate, pending the outcome of the arbitration. *Id.* at 171–72, 732 *A.*2d 555.

When, as here, no rule of procedure answers the procedural question, our responsibility is to proceed in a manner that will "secure a just determination, simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay." *R.* 1:1–2.

The following federal cases support stay of the lawsuit in similar circumstances. In *Am. Home Assur. Co. v. Vecco Concrete Constr. Co., Inc. of Virginia*, 629 *F.*2d 961 (4th Cir.1980), a construction case involving parties that had agreed to arbitrate and others who had not so agreed, the court reversed the denial of a stay of the lawsuit. It reasoned as follows:

[S]ince questions of fact common to all actions pending in the present matter are likely to be settled during the ... arbitration, we find that all litigation should be stayed pending the arbitration proceedings. While it is true that the arbitrator's findings will not be binding as to those not parties to the arbitration, considerations of judicial economy and avoidance of confusion and possible inconsistent results nonetheless militate in favor of staying the entire action.

[*Id.* at 964.]

This approach has been approved by other circuit courts for the same reasons. *See, e.g., City of Bismarck v. Toltz, King, Duvall, Anderson and Assocs., Inc.*, 767 *F.*2d 429, 432 (8th Cir.1985); *Tenneco Resins, Inc. v. Davy Int'l, AG*, 770 *F.*2d 416, 423 (5th Cir.1985). And the District Court of New Jersey has aptly restated the principle in this way: "Where significant overlap exists between parties and issues, courts generally stay the entire action pending arbitration." *Crawford v. West Jersey Health Sys.*, 847 *F.Supp.* 1232, 1243 (D.N.J.1994) (citations omitted). The

same result had been previously reached in *Lawson Fabrics, Inc. v. Akzona, Inc.*, 355 *F.Supp.* 1146, 1151 (S.D.N.Y.), *aff'd*, 486 *F.*2d 1394 (2d Cir.1973).

Although we cannot determine at this early stage of the proceedings the precise degree of overlap between parties and issues, they are quite likely to be substantial. Since the arbitration may well resolve responsibility for all of the slope failures, the principle of conserving judicial resources is a weighty consideration that we believe the trial court improperly ignored. We also believe the trial court failed to give sufficient weight to Elizabethtown's desire to avoid unnecessary litigation costs in light of the probability that the arbitration will resolve all issues of responsibility for the slope failures. Therefore, we reverse the order denying the stay, without, however, addressing issues of collateral estoppel, which are not before us.

Next, we consider Vollers claim that WSA should have been ordered to pursue its third-party complaint against Vollers in the arbitration. That claim is based, not on any contract between WSA and Vollers, but on WSA's contract with Elizabethtown, which is not subject to arbitration. Moreover, in the lawsuit Vollers must respond to Elizabethtown's third-party complaint demanding that Vollers indemnify it for any damages Vollers caused while working for Elizabethtown. The "duty to arbitrate, and the scope of the arbitration are dependent solely on the parties' agreement." *Quigley v. KPMG Peat Marwick, LLP*, 330 *N.J.Super.* 252, 270–71, 749 *A.*2d 405 (App.Div.), *certif. denied*, 165 *N.J.* 527, 760 *A.*2d 781 (2000). Because there was no agreement by WSA to arbitrate its claim against Elizabethtown or against Vollers with respect to the work it asked Elizabethtown to perform, the trial court's decision denying reference of WSA's lawsuit claims to arbitration is affirmed.

Since the lawsuit should have been stayed before issuance of the order for discovery of the Liquidating Agreement and since the arbitrators have determined that the document should not be turned over as part of the on-going arbitration proceedings, we

reverse on this aspect of the case, but the issue may be revisited once the arbitration is completed.

Affirmed in part; reversed in part.