909 A.2d 768 (2006)
388 N.J. Super. 539
Ronald J. BRUNO and Filomena Bruno; Nicholas Bonamassa and Barbara Bonamassa, On Behalf of Themselves and all others Similarly Situated, Plaintiffs-Appellants,
v.
MARK MaGRANN ASSOCIATES, INC. d/b/a MaGrann Associates; Thermal Design, Inc., Defendants-Respondents,
Thermal Design, Inc., Third-Party Plaintiff-Respondent,
v.
U.S. Home Corporation, Third Party Defendant-Intervenor.
Superior Court of New Jersey, Appellate Division.
Argued October 5, 2006.
Decided November 9, 2006.
*769 Joseph A. Osefchen, argued the cause for appellants (Philip Stephen Fuoco, Haddonfield and Shabell & DeNittis, attorneys, Marlton; Mr. Fuoco, Mr. Osefchen, and Stephen P. DeNittis, Marlton, on the brief).
*770 Louis R. Moffa, Jr., Voorhees, argued the cause for respondent, Mark MaGrann Associates, Inc. (Ballard Spahr Andrews & Ingersoll, attorneys; Mr. Moffa, of counsel; Amy M. Trojecki, on the brief).
Michael R. McDonald, Newark, argued the cause for respondent, Thermal Design, Inc. (Gibbons, Del Deo, Dolan, Griffinger & Vecchione, attorneys; Peter J. Torcicollo, of counsel; Mr. McDonald and Lisa Lombardo, on the brief).
Jeanne Schubert Barnum, Cherry Hill, argued the cause for intervenor (Schnader, Harrison, Segal & Lewis, attorneys; Ms. Barnum, Michael J. Weitrzychowski and James R. Costello, II, on the brief).
Before Judges CUFF, WINKELSTEIN and FUENTES.
The opinion of the court was delivered by
WINKELSTEIN, J.A.D.
Plaintiffs purchased single family homes in an adult community in Waretown from U.S. Home Corporation (U.S. Home), the general contractor and developer. Claiming the heating units in their homes did not work properly, plaintiffs filed a class action lawsuit against U.S. Home. The trial court dismissed plaintiffs' complaint and ordered the parties to arbitration based on an arbitration clause in plaintiffs' contracts with U.S. Home. Plaintiffs then instituted this lawsuit, another class action, but this time named the heating subcontractors, rather than the general contractor, as defendants.
The subcontractors subsequently moved to have plaintiffs' complaint dismissed and the dispute sent to arbitration. Though plaintiffs and the subcontractors had no direct contractual relationship, the trial judge nevertheless granted the motion and dismissed the complaint. The court concluded that even in the absence of an express contractual relationship, plaintiffs were required to arbitrate disputes with the subcontractors under the terms of the arbitration clause in plaintiffs' contracts with U.S. Home.
Plaintiffs' argument on appeal is that because they had no contractual relationship with the subcontractors, they are not required to arbitrate their disputes with them, despite their agreement to arbitrate with the general contractor. We disagree. The expansive arbitration clause in plaintiffs' contracts with U.S. Home encompasses the dispute with the subcontractors over the heating systems in plaintiffs' homes. Consequently, plaintiffs are required to submit those disputes to arbitration, even in the absence of a direct contractual relationship with the subcontractors.
The record reflects the following facts and procedural history. Plaintiffs Ronald and Filomena Bruno, and Nicholas and Barbara Bonamassa, purchased homes in the Waretown development from U.S. Home in 2002. U.S. Home contracted with defendants Thermal Design, Inc. and Mark MaGrann Associates (MaGrann), respectively, to design and install the heating systems in the homes. Plaintiffs and other residents complained that the heating systems were defective in that they were incapable of maintaining a consistent temperature above sixty degrees.
In response to those complaints, U.S. Home retained Remington & Vernick Engineers (R & V) to investigate. R & V conducted a survey of homes in the development, including the Bruno home, where it found that the heating equipment was "adequately sized for the residence," and the Bonamassa home, in which it found that the heating equipment was "marginally sized for the residence." U.S. Home then offered to replace the "marginally-sized" 100,000 BTU heaters with 115,000 *771 BTU heaters. Homeowners interested in replacement were asked to sign releases and to keep their terms confidential.
Plaintiffs remained unsatisfied, and in August 2004 they filed a class action complaint in Ocean County against U.S. Home. They alleged in their complaint that their homes were defective in that they were incapable of maintaining a consistent temperature above sixty degrees in the living areas.
In that lawsuit, plaintiffs sought an order directing U.S. Home to arbitration. Plaintiffs relied on their contracts with U.S. Home, which contained a provision captioned "Arbitration of Disputes." That clause says, in pertinent part,
The parties to this Agreement specifically agree that this transaction involves interstate commerce and that any dispute (whether contract, warranty, tort, statutory or otherwise), including, but not limited to, (a) any and all controversies, disputes or claims arising under, or related to, this Agreement, the property, or any dealings between the Buyer and Seller . . .; (b) any controversy, dispute or claim arising by virtue of any representations, promises or warranties alleged to have been made by Seller or Seller's representative; . . . shall first be submitted to mediation and, if not settled during mediation, shall thereafter be submitted to binding arbitration as provided by the Federal Arbitration Act (9 U.S.C. §§ 1 et seq.) or, if inapplicable, by similar state statute, and not by or in a court of law. All decisions respecting the arbitrability of any dispute shall be decided by the arbitrator.
. . . .
. . . Buyer and Seller further agree (1) that any dispute involving Seller's directors, officers, employees and agents shall be resolved as set forth in this agreement and not in a court of law; (2) that Seller shall have the option to include its subcontractors and suppliers as parties in the mediation and arbitration; and (3) that the mediation and arbitration will be limited to the disputes involving the parties specified in this agreement, including any warranty company and insurer.
Less than two weeks after plaintiffs filed their complaint, Judge Clyne dismissed it based on his discussions with all counsel, who agreed that plaintiffs' options for redress included mediation, arbitration, or referral to the homeowner's warranty program, but not a lawsuit.
Nevertheless, a month following the dismissal of their Ocean County complaint, plaintiffs instituted the instant lawsuit in Burlington County. In their new complaint, also captioned as a class action, plaintiffs did not name U.S. Home as a defendant, but instead sought relief against MaGrann and Thermal Design. The factual basis for plaintiffs' claims, however, was the same as that underlying the Ocean County complaintthe heating systems were incapable of maintaining a consistent temperature above sixty degrees in the living areas.
Thermal Design subsequently filed a third-party complaint against U.S. Home, seeking contribution and indemnification, and naming U.S. Home as an indispensable party to the lawsuit. U.S. Home moved to dismiss the third-party complaint on the basis of an arbitration clause in its contract with Thermal Design. That arbitration clause not only required Thermal Design to arbitrate disputes it had with U.S. Home arising out of their contractual agreement, but also required Thermal Design to participate in arbitration between U.S. Home and "a buyer of a residence regarding materials supplied or work performed by" Thermal Design. The court *772 granted that motion and dismissed U.S. Home as a third-party defendant.
At about the same time that U.S. Home sought dismissal of the third-party complaint, the defendant subcontractors moved to dismiss the underlying complaint. They asserted that while they did not have contracts with plaintiffs, plaintiffs were bound to arbitrate disputes such as the one raised in their complaint under the terms of their contracts with U.S. Home. Judge Harrington, in a well-reasoned written decision, agreed and dismissed plaintiffs' complaint. We also agree with defendants' arguments and consequently affirm.
Plaintiffs' arbitration agreement with U.S. Home is subject to the Federal Arbitration Act (FAA), 9 U.S.C.A. §§ 1-16. Under that act, doubts as to the scope of the arbitration are to be resolved in favor of arbitration. Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626, 105 S.Ct. 3346, 3353-54, 87 L.Ed.2d 444, 454-55 (1985); Lederman v. Prudential Life Ins. Co. of Am., 385 N.J.Super. 324, 338-39, 897 A.2d 373 (App. Div.), certif. denied, 188 N.J. 353, 907 A.2d 1013 (2006). A strong public policy favors "arbitration as a means of dispute resolution" and requires "liberal construction of contracts in favor of arbitration." Young v. The Prudential Ins. Co. of Am., 297 N.J.Super. 605, 617, 688 A.2d 1069 (App. Div.1997).
Nonetheless, arbitration remains a matter of contract; the parties may be compelled to arbitrate only that to which they agreed. Leodori v. CIGNA Corp., 175 N.J. 293, 302, 814 A.2d 1098 (2003); Kimm v. Blisset, LLC, 388 N.J.Super. 14, 25, 905 A.2d 887 (App.Div.2006); Lederman, supra, 385 N.J.Super. at 339, 897 A.2d 373. Even so, it is not always necessary that a party be a signatory to an arbitration agreement to be bound by that agreement. See Mutual Benefit Life Ins. Co. v. Zimmerman, 783 F.Supp. 853, 865-66 (D.N.J.), aff'd, 970 F.2d 899 (3d Cir. 1992); Wasserstein v. Kovatch, 261 N.J.Super. 277, 286, 618 A.2d 886 (App. Div.), certif. denied, 133 N.J. 440, 627 A.2d 1145 (1993); cf. Garfinkel v. Morristown Obstetrics & Gynecology Assocs., 333 N.J.Super. 291, 308, 755 A.2d 626 (App. Div.2000) (quoting Mutual Benefit, supra, 783 F.Supp. at 865-66), rev'd, 168 N.J. 124, 773 A.2d 665 (2001) (due to ambiguity in arbitration clause, plaintiff did not waive statutory rights under New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 to -42).
Here, while plaintiffs did not have a contract with the defendant subcontractors, plaintiffs did agree to arbitrate "any and all controversies, disputes or claims arising under, or related to, [their contracts with U.S. Home], the property, or any dealings between" plaintiffs and U.S. Home. Plaintiffs also agreed that U.S. Home had the option to include its subcontractors as parties to the arbitration proceedings, and, under their own contracts with U.S. Home, the subcontractors had a corresponding obligation to arbitrate disputes between U.S. Home and a buyer of a residence regarding work performed by the subcontractor.
Plaintiffs claim that the heating systems in their homes do not work correctly. That claim arises directly out of their contracts with U.S. Home, which contain warrantees against defects in the homes. The arbitration provisions of the U.S. Home contracts require plaintiffs to arbitrate those disputes. The subcontractors, in turn, similarly agreed in their contracts with U.S. Home to arbitrate those types of disputes. Thus, though plaintiffs do not have a contract with the defendant subcontractors, the broad arbitration provisions contained in their U.S. Home contracts bind them to resolve their disputes *773 with the subcontractors by arbitration, just as the subcontractors are bound by their contracts with U.S. Home to do the same. See McBro Planning & Dev. Co. v. Triangle Elec. Constr. Co., 741 F.2d 342, 344 (11th Cir.1984) (contractor and project manager with no contractual relationship required to arbitrate their disputes because the claims were "`intimately founded in and intertwined with'" an underlying contract that contained an arbitration clause) (quoting Hughes Masonry Co. v. Greater Clark County Sch. Bldg. Corp., 659 F.2d 836, 839, 841 n. 9 (7th Cir.1981) (where plaintiff agreed in a contract with defendant to provide masonry service for construction of two schools, and contract contained arbitration provision, plaintiff was required to arbitrate with subcontractor without a direct contract because plaintiff's claim arose out of contract between plaintiff and general contractor)); Wasserstein, supra, 261 N.J.Super. at 286, 618 A.2d 886 (relationship of the claim to the subject matter of the arbitration clause determines arbitrability).
Other reasons exist to require plaintiffs to arbitrate. The first is that U.S. Home is an indispensable party to the dispute between plaintiffs and the subcontractors. A party is indispensable if it has an interest "inevitably involved in the subject matter before the court and a judgment cannot justly be made between the litigants without either adjudging or necessarily affecting the absentee's interest." Allen B. Du Mont Labs., Inc. v. Marcalus Mfg. Co., 30 N.J. 290, 298, 152 A.2d 841 (1959); Jennings v. M & M Transp. Co., 104 N.J.Super. 265, 272, 249 A.2d 631 (Ch. Div.1969); see also R. 4:28-1 (establishing criteria for joinder of persons needed for just adjudication). Here, in the construction of plaintiffs' homes, Thermal Design designed the heating units, and MaGrann installed them, all pursuant to their contractual obligations with U.S. Home. As the trial judge accurately stated, "the claims in this action cannot be severed from those against U.S. Home nor can [they] be adequately redressed absent involvement of U.S. Home."
Another ground upon which to require plaintiffs to arbitrate with the subcontractors is that the arbitration agreements between U.S. Home and its subcontractors render arbitration the only forum where all parties can proceed in a single action to have the dispute resolved. Permitting all parties to resolve the dispute in a singular proceeding avoids piecemeal litigation. See Ohio Cas. Ins. Co. v. Benson, 87 N.J. 191, 199, 432 A.2d 905 (1981); see also Cogdell v. Hosp. Ctr. at Orange, 116 N.J. 7, 15, 560 A.2d 1169 (1989) (resolving a dispute in a single proceeding promotes the recognized goals of fairness to all parties with a material interest in the action, enhances efficiency, reduces delay and avoids waste).
Finally, we conclude that under the circumstances, plaintiffs are estopped from avoiding arbitration. The subject complaint presents the same factual allegations as those in the Ocean County complaint. In both cases, the merits of the dispute are bound up with plaintiffs' contracts with U.S. Home. Plaintiffs cannot now avoid arbitration simply by omitting the general contractor from its complaint. Cf. JLM Indus. v. Stolt-Nielsen SA, 387 F.3d 163, 177-78 (2d Cir.2004) (nonsignatory to arbitration agreement may compel signatory to arbitrate when issues to be litigated are intertwined with agreement containing arbitration clause); Choctaw Generation Ltd. P'ship v. Am. Home Assurance Co., 271 F.3d 403, 406 (2d Cir. 2001) (signatory to an arbitration agreement may be estopped from avoiding arbitration with a nonsignatory when the issue in dispute between the parties is bound up *774 in a contract containing an arbitration clause); M.S. Dealer Serv. Corp. v. Franklin, 177 F.3d 942, 947 (11th Cir. 1999) (signatory may be estopped from denying arbitration when "claims against a nonsignatory make[] reference to or presume[] the existence of the written agreement") (internal quotations omitted).
In their brief, plaintiffs argue that Elizabethtown Water Co. v. Watchung Square Assocs., 376 N.J.Super. 571, 871 A.2d 140 (App.Div.2005) and Sparwick Contracting, Inc. v. Tomasco Corp., 335 N.J.Super. 73, 761 A.2d 90 (App.Div.2000) stand for the proposition that they are not bound to arbitrate because they had no contract with the subcontractors. Both cases have complicated facts and are not in our opinion analogous. In neither case is there an indication that the parties who sought to avoid arbitration signed a contract containing an expansive agreement to arbitrate as did plaintiffs here in their contracts with U.S. Home. Elizabethtown, supra, 376 N.J.Super. 571, 871 A.2d 140; Sparwick, supra, 335 N.J.Super. 73, 761 A.2d 90.
Affirmed.