**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1163-20

RD FOODS AMERICAS,
INC., a New Jersey Corporation,

     Plaintiff-Respondent,

v.

DYCOTRADE HGH B.V., a
Foreign Limited Liability
Company,

     Defendant-Appellant.

_____

Argued November 9, 2021 – Decided August 15, 2022

Before Judges Hoffman, Geiger, and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-4059-20.

Gerd W. Stabbert, Jr. argued the cause for appellant (Bressler, Amery & Ross, PC, attorneys; Gerd W. Stabbert, Jr., on the briefs).

Bruce H. Snyder argued the cause for respondent (Lasser Hochman, LLC, attorneys; Bruce H. Snyder, on the brief).

PER CURIAM

By leave granted, defendant DycoTrade HGH B.V. (defendant or DycoTrade), a company based in the Netherlands, appeals from the December 11, 2020 Law Division order that denied its motion to compel arbitration and dismiss the complaint filed by plaintiff RD Foods Americas, Inc. (plaintiff or RD Foods), a New Jersey corporation. Because there are disputed facts as to whether plaintiff agreed to arbitrate its claim, and because we reject the conclusion of the motion judge that the subject arbitration provision is otherwise unenforceable, we reverse and remand for further proceedings.

I.

We glean these facts from the motion record. Established as a holding company in 1999, plaintiff supplies and manufactures canned seafood products and markets high-volume commodity items, such as canned fruits and vegetables for the retail, food service, and industrial trades. Plaintiff is part of the RD Group of Companies located in Rotterdam, Netherlands; in addition, it serves as the European Sales and Distribution office for the RD Corporation Group's tuna production facilities. On its website, plaintiff lists its warehouse locations throughout the United States, with its "[m]ain warehouse" in Edison.

Defendant provides software services for commodity and trade companies, including modules to manage trading, logistics, risk, and accounting functions. Defendant maintains its registered office in Aalsmeer, Netherlands.

In June 2019, Dolly Bation, plaintiff's controller, contacted defendant through Albert W.G. Carabin, a Director of RD Foods Rotterdam, to solicit defendant to perform software services for plaintiff. On June 28, 2019, Carabin responded to Bation by email, with a copy sent to defendant, confirming the solicitation of defendant to provide software services.

Between September 29 and October 4, 2019, Bation visited the Netherlands and met with representatives from defendant. During this visit, he received two contracts regarding the provision of software services. On October 10, 2019, Bibergal signed the documents on behalf of plaintiff and Reitsema signed the documents on behalf of defendant. Pursuant to the contracts, defendant agreed to provide certain software and services to plaintiff by supplying, installing, and implementing software programming and licenses for use by plaintiff in connection with its accounting, manufacturing, warehousing, invoicing, check-writing, and inventory needs. One of the contracts stated the ways in which defendant would implement its services, which included "[o]ut

of the box implementation, based on existing environment of RD Food Rotterdam [Netherlands]."

In each contract, defendant agreed to supply RD Foods with certain "goods and/or services and/or to grant licenses in accordance with Dycotrade's general Terms and Conditions, which Terms and Conditions form an integral part of this contract for services and which are appended hereto." These general terms and conditions are contained in a four-page document entitled "Terms and Conditions of Supply DycoTrade HGH B.V." (the Terms and Conditions document). The parties strongly dispute whether the Terms and Conditions document was, in fact, appended to either of the software/services contracts signed by the parties.

Relevant to this appeal, article 23.4 of the Terms and Conditions document states:

> Any disputes that may arise between the [p]arties further to or as a consequence of these [c]onditions and any quotations and offers of [defendant] and all legal relationships, including [c]ontracts, with [defendant] and services provided by [defendant], shall be settled in accordance with the Rules of Arbitration of the Dutch Arbitration Institute. The arbitration tribunal shall be composed of three arbitrators, unless the [p]arties jointly agree on one arbitrator. The arbitration tribunal shall decide in accordance with the rules of the law. The place of arbitration is Amsterdam. The arbitration proceedings shall be conducted in Dutch.

4

In providing services to plaintiff, defendant's workers primarily worked remotely from the Netherlands; however, they did travel three times to plaintiff's facility in Ramsey: three of defendant's consultants visited for five days, beginning on November 3, 2019; the same three consultants returned for six days, beginning on November 24, 2019; and two of the three consultants returned for eight days, beginning on January 14, 2020. Defendant regularly sent plaintiff invoices, including for travel expenses, which plaintiff paid by wire transfer to defendant's bank in the Netherlands.

Despite defendant's efforts, by May 2020, plaintiff concluded that defendant's performance warranted termination of the parties' contractual arrangement. On May 22, 2020, after claiming it made multiple attempts to have defendant "remedy its defaults and render its programs operational," plaintiff provided notice to defendant that it was terminating the contracts and requested a full refund of all expenses and payments it made.

When defendant failed to forward the requested refund, plaintiff filed this action on July 13, 2020. Plaintiff's complaint alleged that defendant provided "programs [that] were non-functional and non-operational, and did not provide [plaintiff] with the services called for under" their contracts. Plaintiff also included a demand for judgment "[d]eclaring and adjudging that the so-called

5

'Terms and Conditions' . . . are not part of any contract or agreement [between the parties]."

On July 29, 2020, counsel for defendant sent a letter to plaintiff stating that "[b]ased on article 23.1 of the general terms and conditions [of the agreement], Dutch law is applicable to the agreement . . . [and] legal proceedings must be initiated before the Dutch Arbitration Institute." On July 31, 2020, counsel for plaintiff sent an email to counsel for defendant, claiming that the provisions of the Terms and Conditions document were not binding because the document had not been attached to defendant's contracts, and "[u]nder any circumstances," the arbitration provision was unenforceable.

On October 5, 2020, defendant filed a motion to compel arbitration and dismiss plaintiff's complaint. In opposition, plaintiff filed certifications of Hillel Bibergal, plaintiff's managing director, and Bation, who both maintained that the Terms and Conditions document was not attached to either software/services contract. Bibergal and Bation both certified that defendant provided only the two software/services contracts, plus a document titled "Microsoft Cloud Agreement." According to Bibergal and Bation, they were under the impression that the "Terms and Conditions" referenced in the contracts was referring to the Microsoft Cloud Agreement.

6

In his certification, Bation stated that although the contracts referred to the Terms and Conditions, the Terms and Conditions were neither shown to him nor discussed with him. Bation certified that when defendant emailed him the fully executed contracts, the attachments to the email were the software/services contracts and the Microsoft Cloud Agreement, and no other documents.

Defendant then filed a certification of Ouko Reitsema, its managing director, who disputed critical parts of the certifications of Bibergal and Bation. Reitsema certified that Bation and Bibergal visited RD Foods Rotterdam in the Netherlands, where they displayed familiarity with defendant's offers and services. According to Reitsema, during this visit, Bation "received two agreements[,] each captioned 'Contract Software/Services," along with a Microsoft Cloud solution provider agreement and a "Terms and Conditions" document.

On October 10, 2019, Bibergal signed the two software/services contracts on behalf of plaintiff. Later the same day, Reitsema signed the contracts on behalf of defendant. According to Bation, he never saw the "Terms and Conditions" document until August 6, 2020, after defendant's attorney sent it to plaintiff's attorney.

A-1163-20

On December 4, 2020, the parties appeared for oral argument on defendant's motion; one week later, the motion judge issued an order and written opinion denying defendant's motion to compel arbitration and dismiss plaintiff's complaint.

First, the judge held that New Jersey law controls because, based on the circumstances surrounding the contracts, New Jersey was the venue with the most significant relationship to the transactions and the parties. The judge then applied the principles set forth in <u>Alpert, Goldberg, Butler, Norton & Weiss, P.C. v. Quinn</u>, 410 N.J. Super. 510, 535 (App. Div. 2009), and determined that the Terms and Conditions were never produced to plaintiff. The judge provided the following explanation for his decision:

> In this case, the signed contract[s] contained no document dates or identifiable publication number for the General Terms and Conditions. [Plaintiff] was neither provided with the General Terms and Conditions, nor was it advised of their existence. Furthermore, [plaintiff] was provided with a document entitled "Microsoft Cloud Agreement" which it mistook for the said General Terms and Conditions. Under the circumstances, it is not possible that General Terms and Conditions were described in such terms that their identity may be ascertained beyond a reasonable doubt. It is also not the case that [p]laintiff had knowledge of and assented to the incorporated terms when it did not even know of the allegedly incorporated terms until after the contract was executed. For these reasons, the [m]otion to [c]ompel [a]rbitration must be denied.

8

The judge further held that even if the Terms and Conditions were incorporated into the contracts, the arbitration clause was unenforceable under Atalese v. U.S. Legal Servs. Grp., L.P., 219 N.J. 430, 440 (2014). The judge stated the language of the arbitration clause did not indicate that plaintiff was waiving its right to seek a determination of disputes in court; other provisions within the Terms and Conditions document conflicted with the arbitration clause; and the clause was not a clear and unambiguous notice of such a waiver. The judge therefore held that these deficiencies additionally rendered the arbitration clauses in the subject contracts unenforceable.

## II.

Our review of an order denying a motion to compel arbitration is de novo. Knight v. Vivint Solar Dev., LLC, 465 N.J. Super. 416, 425 (App. Div. 2020) (citing Goffe v. Foulke Mgmt. Corp., 238 N.J. 191, 207 (2009)). When reviewing a motion to compel arbitration, the court makes a two-prong inquiry: (1) whether there is a valid and enforceable agreement to arbitrate disputes; and (2) whether the dispute falls within the scope of the agreement. Martindale v. Sandvik, Inc., 173 N.J. 76, 86, 92 (2002).

"An agreement to arbitrate, like any other contract, 'must be the product of mutual assent, as determined under customary principles of contract law.'"

Atalese, 219 N.J. at 442 (quoting NAACP of Camden Cnty. v. Foulke Mgmt. Corp., 421 N.J. Super. 404, 424, (App. Div. 2011)). "Simply put, without an agreement to arbitrate, there can be no arbitration." MZM Constr. Co. v. N.J. Bldg. Laborers Statewide Benefit Funds, 974 F.3d 386, 397 (3d Cir. 2020) (citing Sandvik AB v. Advent Int'l Corp., 220 F.3d 99, 104 (3d Cir. 2000)).

Orders compelling or denying arbitration are treated as final orders for purposes of appeal. R. 2:2-3(3); GMAC v. Pittella, 205 N.J. 572, 575 (2011). Arbitration is a matter of contract, Bruno v. Mark MaGrann Assocs., 388 N.J. Super. 539, 546 (App Div. 2006), and, as such, is a question of law, Antonucci v. Curvature Newco, Inc., 470 N.J. Super. 553, 560 (App. Div. 2022).

When a complaint and supporting documents are unclear, or a party presents facts that place an agreement to arbitrate in issue, the court should require limited discovery concerning the formation of the agreement and whether the parties agreed to arbitrate. See Rippon v. Smigel, 449 N.J. Super. 344 (App. Div. 2017) (permitting limited jurisdictional discovery); Knight v. Vivint Solar Developer, LLC, 465 N.J. Super. 416, 419 (App. Div. 2020) (reversing order compelling arbitration and remanding for a plenary hearing).

If a case involves "questions of fact concerning the mutuality of assent to the arbitration provision," we may remand the matter for the trial court to resolve

those issues.  Knight, 465 N.J. Super. at 427-28.  In Knight, where the plaintiff asserted she never saw or signed the purported arbitration agreement and claimed the agreement presented in court contained "a forged signature," we vacated an order compelling arbitration and remanded "for a plenary hearing," given the parties' conflicting accounts.  Id. at 419, 423.  We acknowledged that formation of an arbitration agreement is an issue "to be decided by the trial court" and "conclude[d] there exist[ed] questions of fact concerning the mutuality of assent to the arbitration provision, which [was] necessary to bind both parties to arbitration."  Id. at 426-27.

On appeal, defendant argues that the motion judge committed multiple errors, including ruling on the motion, without ordering limited discovery, given the conflicting certifications before the court.  In addition, defendant argues that the judge erred when he made his alternative finding that the arbitration clause was unenforceable under Atalese.  Both arguments have merit.

Because the record reflects a genuine issue of material fact – whether defendant provided plaintiff the Terms and Conditions document at or before the time the parties executed the subject contracts on October 10, 2019 – we agree that the motion judge erred by not ordering limited discovery before deciding this critical issue.  As in Knight, the record here clearly reflects

11

"questions of fact concerning the mutuality of assent to the arbitration provision." Knight, 465 N.J. Super. at 426-27.

We also agree the motion judge erred when he concluded the arbitration clause in the Terms and Conditions document was unenforceable under Atalese, even if the document was provided to plaintiff before the parties signed the subject contracts.

In Atalese, our Supreme Court invalidated an arbitration provision of a consumer contract of adhesion because it: (1) did not include an explanation that the plaintiff was waiving her right to seek relief in court; (2) did not explain what arbitration is or how it differs from seeking judicial relief; and (3) lacked the plain language necessary to convey to the average consumer that he or she is waiving the right to sue in court. 219 N.J. at 446. The Court noted that "an average member of the public may not know – without some explanatory comment – that arbitration is a substitute for the right to have one's claim adjudicated in a court of law." Id. at 442. Thus, an arbitration clause "in some general and sufficiently broad way, must explain that the plaintiff is giving up her right to bring her claims in court or have a jury resolve the dispute." Id. at 447. "No particular form of words is necessary to accomplish a clear and unambiguous waiver of rights." Id. at 444.

A-1163-20

The Court later recognized that its holding in <u>Atalese</u> was primarily driven by the fact that it was examining a consumer contract. The Court explained:

> We were guided essentially by twin concerns. First, the Court was mindful that a consumer is not necessarily versed in the meaning of law imbued terminology about procedures tucked into form contracts. The decision repeatedly notes that it is addressing a form consumer contract, not a contract individually negotiated in any way; accordingly, basic statutory consumer contract requirements about plain language implicitly provided the backdrop to the contract under review. And, second, the Court was mindful that plain language explanations of consequences had been required in contract cases in numerous other settings where a person would not be presumed to understand that what was being agreed to constituted a waiver of a constitutional or statutory right.
>
> . . . .
>
> The consumer context of the contract mattered.
>
> [<u>Kernahan v. Home Warranty Adm'r of Fla., Inc.</u>, 236 N.J. 301, 319-20 (2019).]

Based upon the clarification provided by the Court in <u>Kernahan</u>, we are satisfied that <u>Atalese</u> does not apply to this type of commercial contract between commercial entities. Thus far, <u>Atalese</u> has only been applied to consumer and employment contracts. <u>See</u> <u>e.g.</u>, <u>Wollen v. Gulf Stream Restoration and Cleaning, LLC</u>, 468 N.J. Super. 483 (App. Div. 2021); <u>Morgan v. Raymours Furniture Co., Inc.</u>, 443 N.J. Super. 338 (App. Div. 2016).

13                                                          A-1163-20

Here, the parties are sophisticated commercial entities. The arbitration clause unambiguously states that any dispute that arises between the parties "shall be settled in accordance with the Rules of Arbitration of the Dutch Arbitration Institute," with the arbitration to take place in Amsterdam and conducted in Dutch.

To the extent we have not addressed a particular argument, it is because our disposition makes it unnecessary or the argument lacks sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

The December 11, 2020 order is reversed and the matter is remanded to the Law Division for further proceedings.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

14