**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1592-24

TIGER REVITALIZATION FUND,
LLC and 408 WHITON PLAZA, LLC,

     Plaintiffs-Respondents,

v.

309 PINE PLAZA, LLC and
SHIMON JACOBOWITZ,

     Defendants-Appellants,

and

PINE WHITON HOLDINGS, LLC,

     Interested Party.

_____

309 PINE PLAZA, LLC, 309 PINE
PLAZA TENANT, LLC, 309 PINE
PLAZA MANAGER, LLC, CAVEN
ACRES, LLC, and SHIMON
JACOBOWITZ, individually and
derivatively on behalf of 129 LINDEN
HOLDINGS, LLC and PINE WHITON
HOLDINGS, LLC,

     Third-Party Plaintiffs-Appellants,

v.

MOSHE C. "MARK" RIGERMAN,
PAUL JENSEN, f/k/a YISROEL
RIGERMAN, ELIMELECH RIGERMAN,
TIGER REVITALIZATION FUND, LLC,
408 WHITON PLAZA, LLC, 408
WHITON PLAZA MANAGER, LLC,
STREKTE CORP., STREKTE NY, LLC,
STK EIGHT, LLC, FOLXCO, LLC, and
CAVEN VIEWS, LLC,

      Third-Party Defendants-
      Respondents.

and

129 LINDEN HOLDINGS, LLC,
LINDEN GARDENS JC LLC, CAVEN
POINT PARTNERS LLC, KISPM, LLC,
and PINE WHITON HOLDINGS, LLC,

      Nominal/Interested Parties.

_____

Argued October 27, 2025 – Decided November 24, 2025

Before Judges Sabatino and Walcott-Henderson.

On appeal from the Superior Court of New Jersey, Chancery Division, Hudson County, Docket No. C-000072-24.

Luke J. O'Brien argued the cause for appellants (Calcagni & Kanefsky LLP, attorneys; Samuel Scott Cornish and Luke J. O'Brien, of counsel and on the briefs).

A-1592-24

Andrew R. Macklin argued the cause for respondents (Brach Eichler, LLC, attorneys; Thomas Kamvosoulis, of counsel; Andrew R. Macklin, of counsel and on the brief; John A. Simeone, on the brief).

PER CURIAM

This appeal concerns whether some or all of the claims in multiple related lawsuits should be arbitrated. It arises out of a fierce legal battle involving businessmen Shimon Jacobowitz, Moshe "Mark" Rigerman, Paul Jensen, and their associated entities.

Despite the complexity of the matter, we endeavor to describe the context succinctly. Jacobowitz took part with Rigerman and Jensen in four real estate projects, three in Jersey City and one in New Brunswick.

Of particular relevance here is an agreement between Rigerman and Jensen entities and Jacobowitz entities regarding one of the properties, located on Pine Street in Jersey City, which was held under the name Pine Whiton Holdings, LLC ("Pine Whiton"). According to Jacobowitz, Rigerman and Jensen represented to him that they were able to develop the Pine Street property into an apartment building for a total cost of no more than $10 million. Jacobowitz later claimed Rigerman's and Jensen's representations were inaccurate, and that the completed project exceeded that sum. Meanwhile,

Rigerman and Jensen claim that their entities own a majority interest in Pine Whiton as a result of Jacobowitz defaulting on a 2019 loan agreement.

The Operating Agreement ("OA") for Pine Whiton included an arbitration clause requiring that any dispute arising out of or relating to the agreement or company "shall be submitted to binding arbitration before a qualified arbitrator . . . under [a private dispute resolution company's] Streamlined Arbitration Rules and Procedures."

The parties' interrelated disputes came to a head in 2023. They then entered into what is described by Jacobowitz as a settlement agreement that enabled them to refinance the construction loan for the Pine Street project and obtain a permanent loan and mortgage. The refinancing closed in November 2023, and the parties received funds that Jacobowitz claims were disproportionately distributed.

Beginning in May 2024, Rigerman, Jensen, and their associated entities ("the Rigerman/Jensen parties") filed four separate complaints, three in the Chancery Division and one in the Law Division, alleging Jacobowitz and his entities ("the Jacobowitz parties") engaged in various breaches and misdeeds on each project. The Jacobowitz parties responded with a 422-paragraph answer and counterclaim, reciprocally accusing the Rigerman/Jensen parties of various

A-1592-24

breaches and misdeeds.  Three of the counts in the counterclaim (counts VI, VII and X) related to the Pine project.

In vigorous motion practice, the Rigerman/Jensen parties argued that counts VI, VII, and X of the counterclaim must be dismissed and arbitrated in accordance with the arbitration clause in the OA.  The Jacobowitz parties did not dispute the existence of the arbitration clause but argued the Rigerman/Jensen parties had waived arbitration.  In the alternative, they moved to compel arbitration for all of the Rigerman/Jensen parties' claims.

In a written order on December 20, 2024, the court granted arbitration solely as to the three above-noted counts of the counterclaim, leaving all remaining claims in the Superior Court.  The court declined to stay the litigation while the arbitration proceeded.

The Jacobowitz parties have appealed, arguing the trial court erred in granting the arbitration motion and in rejecting their assertion of waiver.  They further argue the court erred in denying their cross-motion, in the alternative to a ruling of waiver, for an order compelling arbitration of all claims subject to arbitration.

Nothing more needs to be said about the facts and procedural history, with which the parties are well familiar.

A-1592-24

I.

On appeal, the Jacobowitz parties argue: (1) the Rigerman/Jensen parties waived their right to arbitration under the factors of Cole v. Jersey City Med. Ctr., 215 N.J. 265, 276 (2013); and (2) in the alternative, if no waiver is found and arbitration is mandated, then all claims in the related lawsuits should be adjudicated in that arbitral forum. Relatedly, the Jacobowitz parties request a stay of all court proceedings pending the outcome of any arbitration because they contend the 2023 settlement agreement is central to the claims on each project.

For the reasons that follow, we affirm the trial court's decision referring only the three specified counts of the counterclaim to arbitration and finding no waiver. However, we remand the matter for a case management conference. At the conference the court should further consider, with additional input from counsel, whether a full or partial stay of the litigation is prudent while the severed claims are being arbitrated.

A.

Our review of the trial court's ruling is guided by several established principles.

To begin with, there is a strong judicial preference for "arbitration as a

A-1592-24

mechanism of resolving disputes," when parties have agreed to resolve their differences in that forum in lieu of the court system. Martindale v. Sandvik Inc., 173 N.J. 76, 92 (2002). Arbitration agreements are only valid if they are "the product of mutual assent, as determined under customary principles of contract law." NACCP of Camden Cnty. E. v. Foulke Mgmt. Corp., 421 N.J. Super. 404, 424 (App. Div. 2011). Parties are "not require[d] to arbitrate when they have not agreed to do so," and parties are not prevented "from excluding certain claims from the scope of their arbitration agreement." Volt Info. Scis. v. Bd. of Trs. of Leland Stanford Jr. Univ., 489 U.S. 468, 477 (1989). Furthermore "only those issues may be arbitrated which the parties have agreed shall be." Garfinkel v. Morristown Obsterics & Gynocology Assoc., P.A., 168 N.J. 124, 132 (2001) (quoting In re Arb. Between Grover & Universal Underwriters Ins. Co., 80 N.J. 221, 228 (1979)).

A trial court's decision to compel arbitration is reviewed de novo "because the validity of an arbitration agreement presents a question of law." Ogunyemi v. Garden State Med. Ctr., 478 N.J. Super. 310, 315 (App. Div. 2024). More specifically, a court's ruling on a contention of arbitration waiver is reviewed de novo. Marmo and Sons Gen. Contracting v. Biagi Farms, 478 N.J. Super. 593, 607 (App. Div. 2024).

Generally, waiver is "the voluntary and intentional relinquishment of a known and existing right."  Quigley v. KPMG Peat Marwick, LLC 330 N.J. Super. 252, 267 (App. Div. 2000) (quoting 13 Williston on Contracts § 39:14 (Lord ed. 2000)).  "The same principles govern waiver of a right to arbitrate as any other right."  Cole, 215 N.J. at 276.

Although "waiver is never presumed," an arbitration agreement can "'be overcome by clear and convincing evidence that the party asserting it chose to seek relief in a different forum.'"  Ibid. (quoting Spaeth v. Srinivasan, 403 N.J. Super. 508, 514 (App. Div. 2008)).  For a party's conduct to constitute waiver, the conduct should demonstrate waiver "clearly, unequivocally and decisively."  Id. at 277.

Our Supreme Court enumerated in Cole, 215 N.J. at 280-81, seven factors for assessing whether a party, under the totality of the circumstances, has waived the right to compel arbitration.  Those seven Cole factors are as follows:

> (1) the delay in making the arbitration request; (2) the filing of any motions, particularly dispositive motions, and their outcomes; (3) whether the delay in seeking arbitration was part of the party's litigation strategy; (4) the extent of discovery conducted; (5) whether the party raised the arbitration issue in its pleadings, particularly as an affirmative defense, or provided other notification of its intent to seek arbitration; (6) the proximity of the date on which the party sought arbitration to the date of

trial; and (7) the resulting prejudice suffered by the other party, if any.

[Ibid.]

"No one factor is dispositive." Ibid. Moreover, the factors are "non-exclusive." Largoza v. FKM Real Est. Holdings, 474 N.J. Super. 61, 84 (App. Div. 2022) (explaining the Cole factors and applying them to a forum selection clause). Courts may consider other factors in determining waiver based on the "totality of the circumstances." Cole, 215 N.J. at 80.

Applying these factors to the situation in Cole, the Court held the defendant that moved to compel arbitration had waived that right for multiple reasons. Among other things, the Court noted there had been a twenty-one-month delay in moving to compel arbitration, the motion was filed only three days before the scheduled trial, the defendant had earlier filed a dispositive motion for summary judgment, and the defendant had failed in its pleadings to assert arbitration as one of thirty-five affirmative defenses. Id. at 281-83.

More recently, we illustrated the application of the Cole factors in Marmo, 478 N.J. Super. at 593, concluding in that scenario that the contractual right to arbitration had been waived. We determined that although a six-month delay did not weigh heavily in favor of waiver and there had been no motion practice, the party moving to compel arbitration (there, a plaintiff) had obtained

"substantial discovery" from the defense, while the defense had not conducted discovery to the same degree. Id. at 612. In addition, we noted that the plaintiff in Marmo had not raised arbitration in its initial complaint, nor had it asserted in its Rule 4:5-1 certification attached to these pleadings that arbitration was contemplated. Id. at 613. We also observed that the presence or absence of prejudice alone was not a dispositive factor, noting that only "moderate" prejudice would ensue in that case from granting arbitration. Ibid.

B.

Here, we concur with the trial court's assessment that the balance of Cole factors weigh in favor of its finding that the Rigerman/Jensen parties had not waived their right to arbitrate the severed claims. We briefly address the factors, in turn.

### (1) The Delay in Making the Arbitration Request

The chronology reflects there was a delay of approximately six months from when the first arbitrable claims were filed and when the Rigerman/Jensen parties sought to compel arbitration. Unlike the circumstances in Cole and Marmo, the parties here were not engaged in substantial discovery nor post-pleading active litigation during those six months. Cf. Cole, 215 N.J. at 282 ("up to that time, the parties invested considerable time in the lawsuit"); Marmo,

10

478 N.J. Super. at 612 ("Marmo obtained substantial discovery from Biagi").

The Jacobowitz parties did not file their omnibus pleading and counterclaim until about six months after the Rigerman/Jensen parties had filed the Pine action. Once the pleading was filed, it took only a little more than a month before the Rigerman/Jensen parties announced their intent to seek arbitration, in connection with their motion to sever.

It is readily apparent that the lawsuits were in their early stages. The delay here is far less than the twenty-one months that transpired in <u>Cole</u>. Nor is it qualitatively comparable to the six-month period in <u>Marmo</u>, for the reasons we have noted.

(2) The Filing of Any Motions, Particularly Dispositive Motions, and Their Outcome

This factor likewise weighs against waiver. We recognize the Rigerman/Jensen parties initially moved to dismiss the counterclaims unrelated to the Pine project, without prejudice. But they soon thereafter notified the court of their intent to move to sever claims and compel arbitration while that dismissal motion was pending. The dismissal motion appears to have been grounded on the same procedural logic as the alternative motion to sever: namely, that claims in the omnibus pleading relating to other projects should not be heard in the same action as claims relating to the Pine project.

11

Unlike the situation in <u>Cole</u>, 215 N.J. at 282, we do not discern a comparable effort to adjudicate issues on their merits through dispositive motion practice in the court, in order to have those results carried into arbitration. In any event, the motion practice here did not dispose of any issues on the merits and was largely procedural and preliminary in nature.

(3) Whether Delay in Seeking Arbitration Was Part of the Party's Litigation Strategy

We are unpersuaded that, as the Jacobowitz parties allege, the Rigerman/ Jensen parties purposefully delayed in seeking arbitration in furtherance of a presumed litigation strategy to complicate litigation and "overwhelm" their adversaries with multiple lawsuits and claims in different proceedings.

As we noted above with respect to <u>Cole</u> factor (2), the Rigerman/Jensen parties evidently would prefer to litigate the issues involving each real estate project separately, but that preference does not necessarily bespeak a strategic explanation for their six-month delay in seeking arbitration. Each project in dispute involves different entities, different agreements, and different alleged misdeeds. Although the Jacobowitz parties contend that all of the projects are connected through the 2023 settlement, the parties disagree on the significance and finality of that agreement. Reasonable minds can differ about whether the cases are ideally pursued separately instead of being decided in one case in one

12

forum. In any event, the six-month delay appears to have little, if any, relationship to a presumed litigation strategy.

(4) The Extent of Discovery Conducted

All parties recognize that this factor does not weigh in favor of waiver. At oral argument on the appeal and in their briefs, counsel acknowledged that as of the time arbitration was raised by the Rigerman/Jensen parties, only discovery demands had been served, without yet the turnover of discovery. No depositions had been taken.

(5) Whether the Party Raised Arbitration in its Pleadings

The Rigerman/Jensen raised at least one, and arguably two, arbitrable claims in their initial complaint, but did not disclose that these claims were subject to an arbitration provision in their accompanying Rule 4:5-1 certification.[1]

---

[1] Although count II of the Rigerman/Jensen complaint, which asserts claims arising under loan documents which did not contain an arbitration provision, might not necessarily be encompassed within the OA's arbitration provision, the same is not true of count IV, which alleges the Jacobowitz parties breached their fiduciary duties to the Rigerman/Jensen parties "as members and managers of Pine Whiton." The Rigerman/Jensen parties referred to count IV in their opposition to the Jacobowitz parties' motion to show cause. Since that time, the Rigerman/Jensen parties have not expressed a clear intent to continue to pursue their count IV claim. Even so, they were continuing to address it at the time they were moving to compel arbitration.

A-1592-24

As we noted in Marmo, when a party initiates an action by filing a complaint in court instead of submitting it to arbitration, and files a companion Rule 4:5-1 certification that no arbitration is contemplated, that omission is a factor that generally weighs in favor of waiver. 478 N.J. Super. at 613. Here, the Rigerman/Jensen parties brought their count IV claim into court, and their subsequent actions reflect a recognition the claim should have been pursued in arbitration. Therefore, this particular factor weighs in favor of a waiver of arbitration.

(6) Proximity to the Date of Trial

In its management of this Chancery action, the trial court established well in advance a projected trial date of September 8, 2025. The Rigerman/Jensen parties moved to compel arbitration on November 27, 2024, having previously notified the trial court of their intent to compel arbitration about three weeks earlier. We do not regard the ten-month period between November 2024 and September 2025 to be commensurate with proximity to a trial date. The situation is not comparable to that in Cole, in which defendant moved for arbitration on the brink of trial. 215 N.J. at 281. This factor weighs against waiver.

(7) The Resulting Prejudice Suffered by the Other Party

As we clarified in Marmo, 478 N.J. Super. at 607, prejudice cannot be

A-1592-24

treated as a dispositive factor in the waiver analysis, see Morgan v. Sundance, Inc., 596 U.S. 411, 419 (2022), but prejudice remains relevant within the overall totality of circumstances.

Here, unlike the non-moving party in Cole, the Jacobowitz parties have not been forced to litigate in a substantial manner the three discrete claims that are now being referred to arbitration within the court action. 215 N.J. at 282. As we have noted above, the Rigerman/Jensen parties announced their intention to compel the Jacobowitz parties' counterclaims relating to the Pine project to arbitration within just a few weeks of those claims being filed.

We are also unpersuaded that the confidentiality of the arbitration proceedings weighs in favor of a finding of prejudice to the Jacobowitz parties. The parties have hurled numerous harsh allegations of improper conduct and accusations of bad faith at one another in their various court filings. We of course express no views about the merits of those yet-to-be-litigated accusations. But the private nature of the arbitration process for a subset of those claims does not translate into a determination that one side of accusers will be more prejudiced than another. Indeed, the alternative request of the Jacobowitz parties to have all claims included within the arbitration, if any are sent there, undermines their contention that they vitally need to be vindicated

A-1592-24

publicly in court.

Summary

In sum, the vast majority of the Cole factors weigh against waiver of the right to arbitration under the OA.  Appellants have not met their burden to prove waiver by "clear and convincing evidence."  We therefore affirm the trial court's sound finding.

## II.

We briefly address the Jacobowitz parties' conditional argument to have all of the claims in the four lawsuits referred to arbitration, rather than just the three isolated counts of the counterclaim.  As we noted above, our case law has long recognized that "only those issues may be arbitrated which the parties have agreed shall be."  Garfinkel, 168 N.J. at 132.

The four complaints and the omnibus counterclaim include a wide array of claims distinct from those that stem solely from the Pine project.  Those claims involve separate transactions and separate agreements.  They are not encompassed by an arbitration clause within an agreement signed on behalf of one of the Rigerman/Jensen parties.  Arbitration clauses must contain "clear and unambiguous language that [a party] is waiving [its] right to sue or go to court to secure relief."  Atalese v. U.S. Legal Serv. Grp., 219 N.J. 430, 446-47 (2014).

16

Apart from the Pine Whiton OA, no such clear and unambiguous language in an agreement mutually executed by the parties is present here. The trial court did not err in restricting the referral to arbitration accordingly.

Although the parties remain free to revise their preferences and reconsider whether to consent to have more of the claims, or all of them, resolved in arbitration, the court should not compel them to do so. The Pine Whiton OA claims are only one part of a mammoth set of claims. We should not force the proverbial tail to wag the dog.

That said, we suggest the trial court revisit its decision to deny a stay of the court cases while the arbitration is pending. When a "court orders arbitration, the court on just terms shall stay any judicial proceeding that involves a claim subject to the arbitration. If a claim subject to the arbitration is severable, the court may limit the stay to that claim." N.J.S.A. 2A:23B-7. While not required," when significant overlap exists between parties and issues, claims against parties who have not agreed to arbitrate should be stayed pending the arbitration." Perez v. Sky Zone, LLC, 472 N.J. Super. 240, 251 (App. Div. 2022). Staying proceedings is intended to avoid "confusion and possible inconsistent results." Elizabethtown Water Co. v. Watchung Square Assoc., LLC, 376 N.J. Super. 571, 578 (App. Div. 2005) (quoting Am. Home Assur.

17

CO. v. Vecco Concrete Constr. Co., Inc. of Virginia, 629 F.2d 961, 964 (4th Cir. 1980)).

We recognize that this litigation is only in its early stages, having been entangled in the threshold procedural question of whether referral to arbitration was warranted. As discovery and investigation unfold, the cases may develop in ways not presently anticipated. Moreover, there may well be a patent risk of findings by an arbitrator that may be inconsistent with determinations within the court action, and vice versa.

With the benefit of our decision today, the parties and the trial court may wish to reconsider the wisdom of litigating issues in two forums simultaneously. We therefore order the trial court to convene a case management conference within twenty days on remand to explore these concerns. We do not retain jurisdiction.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

A-1592-24